## BURGETT *v.* TEXAS.

No. 53.   Argued October 18, 1967.—Decided November 13, 1967.

*Gordon Gooch,* by appointment of the Court, 386 U. S. 953, argued the cause and filed briefs for petitioner.

*Leon Douglas* argued the cause for respondent. With him on the brief were *Crawford Martin,* Attorney General of Texas, *George Cowden,* First Assistant Attorney General, *A. J. Carubbi* and *R. L. Lattimore.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Petitioner was convicted of "assault with malice aforethought with intent to murder; repetition of offense." The jury fixed the punishment at 10 years in the Texas State Penitentiary.[1]   On appeal, the Texas Court of Criminal Appeals affirmed petitioner's conviction.[2]   We granted certiorari, 386 U. S. 931.

---

[1] The maximum penalty for a first conviction of assault with intent to murder is 25 years; the minimum penalty is two years. Tex. Pen. Code, Art. 1160 (Supp. 1966).

[2] *Burgett* v. *State,* 397 S. W. 2d 79 (1965).

Petitioner was charged in a five-count indictment. In the first count the State alleged that he had cut one Bradley with a knife and had stabbed at Bradley's throat with intent to kill. Pursuant to the Texas recidivist statutes,[3] the remaining counts of the indictment consisted of allegations that petitioner had incurred four previous felony convictions: a Texas conviction for burglary, and three Tennessee convictions for forgery. If these allegations were found to be true, petitioner would be subject to a term of life imprisonment upon conviction of the offense charged in count one.[4]

Petitioner's counsel filed a pretrial motion to quash the four counts of the indictment referring to the prior convictions for failure to apprise the defense of what the State would attempt to prove.[5] The record is silent as to the court's action on this motion. But when the indictment was read to the jury at the beginning of the trial, before any evidence was introduced, the four counts relating to the prior convictions were included.

[3] The statutes involved here are Articles 62 and 63 of the Tex. Pen. Code (1952).

Article 62 provides: "If it be shown on the trial of a felony less than capital that the defendant has been before convicted of the same offense, or one of the same nature, the punishment on such second or other subsequent conviction shall be the highest which is affixed to the commission of such offenses in ordinary cases."

Article 63 provides: "Whoever shall have been three times convicted of a felony less than capital shall on such third conviction be imprisoned for life in the penitentiary."

[4] Tex. Pen. Code, Art. 63 (1952).

[5] In petitioner's amended motion for a new trial, which was denied by the court, he explained that the purpose of the pretrial motion was "so that defendant could establish their [the previous convictions alleged for enhancement] admissibility before they were read into the record in the presence of the jury; same reading into the record in the presence of the jury was prejudicial to defendant herein."

During the course of the trial, while the jury was present, the State offered into evidence a certified copy of one of the Tennessee convictions. The conviction read in part, "Came the Assistant Attorney-General for the State and the Defendant in proper person and without Counsel." Petitioner's counsel objected to the introduction of the record on the ground that the judgment on its face showed that petitioner was not represented by counsel in violation of the Fourteenth Amendment. There was no indication in the record that counsel had been waived. The court stated that it would reserve ruling on the objection, apparently to give the State an opportunity to offer any of the other convictions into evidence. The State then offered a second version of the same Tennessee conviction which stated that petitioner had appeared "in proper person" but did not contain the additional words "without counsel." This second version also stated that "After said jury had heard the evidence, argument of counsel, and the charge of the Court, they retired to consider of their verdict." It is not clear, however, whether "counsel" was being used in the singular or plural, and in any event no explanation was offered for the discrepancy between the two records. Petitioner's counsel objected to this second version on the same ground. The court again reserved its ruling.

The State then offered into evidence a certified copy of the indictment in the prior Texas case. Petitioner's counsel indicated he had no objection, and that record was received into evidence. Thereafter, testimony was offered concerning the judgment and sentence in the prior Texas case. After some testimony had been given, the jury was excused and the hearing continued out of its presence. At the conclusion of the hearing, petitioner's attorney objected that the Texas judgment was void on its face under state law. The court sustained that ob-

jection, and the record of the Texas conviction was stricken from evidence. At the same time, the court sustained petitioner's objection to the first version of the Tennessee conviction; but overruled the objection to the second version of the same conviction. The jury was then recalled and testimony was heard on the substantive offense charged. The next reference to the prior convictions was when the court instructed the jury not to consider the prior offenses [6] for any purpose whatsoever in arriving at the verdict.

Petitioner's motion for a new trial was denied. In the Court of Criminal Appeals, petitioner argued, *inter alia*, that the court erred in permitting counts two through five of the indictment to be read to the jury at the beginning of the trial, and in failing to sustain petitioner's objection to the admission into evidence of the second version of the Tennessee conviction. The Court of Criminal Appeals held that since petitioner had not suffered the enhanced punishment provided by the recidivist statutes, and since the instruction to disregard the prior offenses had been given, no error was presented.

We do not sit as a court of criminal appeals to review state cases. The States are free to provide such pro-

---

[6] The court apparently withdrew consideration of the prior convictions from the jury since only the record of the one prior Tennessee conviction for forgery had been accepted. Thus, Article 63 could not be applied to petitioner. Further, since forgery could not be considered as an offense of the "same nature" as assault with intent to murder, Article 62 would not be applicable. See n. 3, *supra*.

The State apparently did not attempt to introduce the records of the other two Tennessee convictions for forgery because the indictment showed that all of the convictions occurred on the same date. To invoke the provisions of Article 63, each succeeding conviction must be subsequent in time to the previous conviction—both with respect to commission of the offense and to conviction. *Cowan* v. *State*, 172 Tex. Cr. R. 183, 355 S. W. 2d 521 (1962).

cedures as they choose, including rules of evidence, provided that none of them infringes a guarantee in the Federal Constitution. The recent right-to-counsel cases, starting with *Gideon* v. *Wainwright,* 372 U. S. 335, are illustrative of the limitations which the Constitution places on state criminal procedures. Those limitations sometimes touch rules of evidence.

The exclusion of coerced confessions is one example. *Chambers* v. *Florida,* 309 U. S. 227.

The exclusion of evidence seized in violation of the Fourth and Fourteenth Amendments is another. *Mapp* v. *Ohio,* 367 U. S. 643.

Still another is illustrated by *Pointer* v. *Texas,* 380 U. S. 400. In that case we held that a transcript of a preliminary hearing had to be excluded from a state criminal trial because the defendant had no lawyer at that hearing, and did not, therefore, have the opportunity to cross-examine the principal witness against him who since that time had left the State. The exclusionary rule that we fashioned was designed to protect the privilege of confrontation guaranteed by the Sixth Amendment and made applicable to the States by the Fourteenth.

The same result must follow here. *Gideon* v. *Wainwright* established the rule that the right to counsel guaranteed by the Sixth Amendment was applicable to the States by virtue of the Fourteenth, making it unconstitutional to try a person for a felony in a state court unless he had a lawyer or had validly waived one. And that ruling was not limited to prospective applications. See *Doughty* v. *Maxwell,* 376 U. S. 202; *Pickelsimer* v. *Wainwright,* 375 U. S. 2. In this case the certified records of the Tennessee conviction on their face raise a presumption that petitioner was denied his right to counsel in the Tennessee proceeding, and therefore that his conviction was void. Presuming waiver of counsel from

a silent record is impermissible. *Carnley* v. *Cochran,* 369 U. S. 506. To permit a conviction obtained in violation of *Gideon* v. *Wainwright* to be used against a person either to support guilt or enhance punishment for another offense (see *Greer* v. *Beto,* 384 U. S. 269) is to erode the principle of that case. Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right.

The admission of a prior criminal conviction which is constitutionally infirm under the standards of *Gideon* v. *Wainwright* is inherently prejudicial and we are unable to say that the instructions to disregard it [7] made the constitutional error "harmless beyond a reasonable doubt" within the meaning of *Chapman* v. *California,* 386 U. S. 18.

Our decision last Term in *Spencer* v. *Texas,* 385 U. S. 554, is not relevant to our present problem. In *Spencer* the prior convictions were not presumptively void. Moreover, the contention was that the guilt phase of the trial was prejudiced by the introduction of the evidence of prior crimes. As the Court noted, "[i]n the procedures before us . . . no specific federal right—such as that dealing with confessions—is involved; reliance is placed solely on a general 'fairness' approach." *Id.,* at

---

[7] See, *e. g., Boyd* v. *United States,* 142 U. S. 450; *United States* v. *Clarke,* 343 F. 2d 90 (C. A. 3d Cir. 1965). Cf. *Waldron* v. *Waldron,* 156 U. S. 361, 383; *Throckmorton* v. *Holt,* 180 U. S. 552; *Lawrence* v. *United States,* 357 F. 2d 434 (C. A. 10th Cir. 1966); *United States* v. *DeDominicis,* 332 F. 2d 207 (C. A. 2d Cir. 1964).

What Mr. Justice Jackson said in *Krulewitch* v. *United States,* 336 U. S. 440, 445, 453 (concurring opinion), in the sensitive area of conspiracy is equally applicable in this sensitive area of repetitive crimes, "The naive assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction."

565.   In this case, however, petitioner's right to counsel,
a "specific federal right," is being denied anew.   This
Court cannot permit such a result unless *Gideon* v.
*Wainwright* is to suffer serious erosion.

*Reversed.*

MR. CHIEF JUSTICE WARREN, concurring.

I am in full agreement with the opinion of the Court
and the reasons stated therein for reversing the convic-
tion in this case.   However, in view of the terse dissent
entered by my Brother HARLAN, I feel constrained to
add some observations of my own.

The dissent refers to the Court's decision in *Spencer*
v. *Texas,* 385 U. S. 554, and the entire thrust of the
dissent is reminiscent of that decision of last Term which
placed this Court's stamp of approval on the Texas recid-
ivist procedures from which this case evolves.   The dis-
sent reminds us that "[w]e do not sit as a court of errors
and appeals in state cases."   I would not disagree with
that statement as an abstract proposition.   But we are
not dealing with abstracts in this case.   We are dealing
with a very real denial of a state criminal defendant's
rights as guaranteed by the Federal Constitution.   We
are also told by the dissent that "this case shows no
prosecutorial bad faith or intentional misconduct."   But
this misses the mark.   We are not limited in our review
of constitutional errors in state criminal proceedings to
those errors which flow from "prosecutorial bad faith or
intentional misconduct." [1]   Our concern is with the effect

---

[1] Prosecutorial bad faith, of course, is not an irrelevant element
in our review of state criminal convictions.   It can often make even
more intolerable errors which demand correction in this Court.   See,
*e. g., Miller* v. *Pate,* 386 U. S. 1; *Napue* v. *Illinois,* 360 U. S. 264;
*Mooney* v. *Holohan,* 294 U. S. 103.

of those errors, whether well-intentioned or not,[2] on the constitutionally protected right of a criminal defendant to a fair and impartial trial.

This case is a classic example of how a rule eroding the procedural rights of a criminal defendant on trial for his life or liberty can assume avalanche proportions, burying beneath it the integrity of the fact-finding process. In *Spencer*, the Court approved a procedure whereby a State, for the sole purpose of enhancing punishment, includes in the indictment allegations of prior crimes which are read to the jury and enters evidence at trial of those prior crimes, no matter how unrelated they might be to the charge on which the defendant is being tried. The rule adopted in *Spencer* went so far as to allow the State to enter evidence on the prior crimes even though a defendant might be willing to stipulate the earlier convictions. In this case, that harsh rule was expanded to a degree close to barbarism.

In addition to charging the petitioner with the principal crime of "assault with malice aforethought with intent to murder," the indictment alleged four prior convictions, one in Texas and three in Tennessee. Despite the efforts of the petitioner's attorney to quash those portions of the indictment referring to the prior crimes, the entire indictment was read to the jury at the start

---

[2] The dissent is not alone in viewing this case solely in terms of the prosecutor's good or bad faith. The Texas Court of Criminal Appeals disposed of the petitioner's objection to the use of the prior void convictions at trial with the cryptic observation that "[t]here is no showing of bad faith on the part of the state in alleging or attempting to prove the prior convictions." Boswell tells us that Dr. Johnson once observed that "Hell is paved with good intentions." Boswell, Life of Samuel Johnson 257 (Great Books ed. 1952). If the good-faith view of this case should prevail, then surely this petitioner's road to prison would be paved with the same good intentions.

of the petitioner's one-day trial. The prosecutor then proceeded to offer evidence of the prior convictions. The petitioner's attorney objected to evidence of one Tennessee conviction because a certified copy of that conviction showed that the petitioner had not been represented by counsel. The trial judge reserved his ruling on the objection. The prosecution next offered a second version of that same Tennessee conviction which omitted any reference to the absence of counsel but which did not show a waiver of counsel. The petitioner's attorney again objected and the trial judge again reserved his ruling. The prosecutor then offered into evidence a certified copy of the indictment in the prior Texas case, and it was received without objection. All this occurred in the presence of the jury. However, when the petitioner's attorney objected to evidence concerning the judgment and sentence in the prior Texas case, the jury was excused and testimony was taken out of the presence of the jury. At the close of that evidence and before the jury returned, the trial judge ruled that the prior Texas conviction was void under state law. In addition, the trial judge sustained the objection to the first version of the Tennessee conviction but overruled the objection to the second version of the same conviction.[3] The jury then returned and the trial continued. The next the jury was to hear of the prior convictions was a brief instruction from the trial judge advising the jurors not to consider the prior crimes for any purpose. The jury was never told, however, that two of the prior convictions charged were void and that the prosecution had failed

---

[3] The record is silent concerning the second and third Tennessee convictions alleged in the indictment, and the prosecution apparently did not offer any evidence on those convictions. However, the jury had been made aware of those prior crimes when the indictment was read at the start of the trial.

to offer testimony on the validity of the other prior crimes charged in the indictment.

Thus, the jury went into its deliberations knowing that the petitioner had been convicted and imprisoned for four prior felonies, although not one had been proven at the trial. To expect that the jury could wipe this from its memory and decide the petitioner's guilt only on the basis of the evidence of assault is to place too much faith in a jury's ability to detach itself from reality. This is particularly true since the trial judge gave the jurors not the slightest clue as to why matters which consumed so much time at trial were suddenly being removed from their consideration.

To suggest that such a procedure accords a man charged with a crime due process is beyond belief. This Court has reversed convictions in other cases based on unfair influences on juries which must be deemed minor when compared to the pervasive prejudice in this case. Not long ago we ruled that a defendant was denied due process when a court bailiff remarked in the presence of the jurors, "Oh that wicked fellow, he is guilty"; and, "If there is anything wrong [in the verdict] the Supreme Court will correct it." *Parker* v. *Gladden,* 385 U. S. 363. We also reversed a murder conviction because two prosecution witnesses were deputy sheriffs who had been assigned to accompany the jury while it was sequestered. *Turner* v. *Louisiana,* 379 U. S. 466.[4] If these transgressions offend constitutional standards of fairness, can it be doubted that the petitioner's trial was stripped of all

---

[4] I do not mean to express any disapproval of our decisions in *Parker* and *Turner.* I joined both of those opinions and I have no doubt the practices condemned in those cases were at odds with settled principles of due process of law. However, it follows *a fortiori* from those decisions that we are presented in this case with a violation of due process.

vestiges of due process when the jurors were told of his prior void convictions and the error was not explained to them?

This case is the frightful progeny of *Spencer* and of that decision's unjustified deviation from settled principles of fairness. Today we have placed a needed limitation on the *Spencer* rule, but nothing except an outright rejection would truly serve the cause of justice.

MR. JUSTICE HARLAN, whom MR. JUSTICE BLACK and MR. JUSTICE WHITE join, dissenting.

The record in this case shows no prosecutorial bad faith or intentional misconduct. To the extent that the prosecutor contemplated the use of prior convictions in a one-stage recidivist trial, his right to do so is of course established by *Spencer* v. *Texas,* 385 U. S. 554, decided only last Term. The fact that the prior convictions turned out to be inadmissible for other reasons involves at the most a later corrected trial error in the admission of evidence. We do not sit as a court of errors and appeals in state cases, and I would affirm the judgment of the state court.