Melvin **MELLER**, Appellant,

v.

**STATE** of Missouri, Respondent.

No. 53803.

Supreme Court of Missouri,
Division No. 2.

March 10, 1969.

Carroll J. McBride, Jefferson City, for appellant.

John C. Danforth, Attorney General, Christopher S. Bond, Assistant Attorney Gen., Jefferson City, for respondent.

PRITCHARD, Commissioner.

Upon his plea of guilty, appellant was convicted of the commission of the crimes of burglary and larceny on April 22, 1952. Proceeding under Supreme Court Rule 27.-26, V.A.M.R., he now seeks to vacate that judgment of conviction.

The grounds for relief set out in paragraph 8 of appellant's motion are these: (a) He was not informed of his right against self-incrimination; (b) he was not informed of his right to have the assistance of counsel; (c) he was not informed of the nature and cause of the accusation against him; (d) he was not accorded the right to meet the witnesses against him face to face; and (e) after he was sentenced, he was repeatedly blocked in his effort to obtain use of an appropriate remedy as guaranteed by the Fourteenth Amendment to the United States Constitution and

Article I, Section 14, of the Missouri Constitution, V.A.M.S. Under paragraph 9 of his motion, appellant alleges: (a) He was subjected to custodial police interrogation without being told he had the right to remain silent and that any statement he would make would be used against him as evidence. He was persuaded while in police custody under promise of a suspended sentence to plead guilty without understanding the nature of the crime of which he was accused, the range of punishment therefor or the import of a guilty plea; (b) he had no money with which to hire an attorney and did not know and was not told that the court would appoint an attorney to represent him without expense. He did not know that an attorney could help him even though he had committed himself while in police custody to plead guilty. Without advice of an attorney, he relied on promises and advice of the prosecuting attorney and waived his preliminary examination in Magistrate Court, and pleaded guilty in the Circuit Court as charged; (c) he did not understand that he was charged with having committed burglary and larceny. He could not interpret the complaint in Magistrate Court nor the information in Circuit Court as stating that he had committed these crimes, and was not told by the prosecuting attorney or the judge that by pleading guilty as charged he was pleading guilty to these crimes. Language deficiencies of the complaint and information help explain his failure of understanding, and that the transcript of the Circuit Court proceedings on March 22, 1952, indicates the court advised him of the nature of a single crime charged and the punishment therefor without naming the crime, but such transcript on April 22, 1952, shows he was sentenced for two crimes—two years for burglary and two years for larceny; (d) he was not accorded the right to be confronted with the witnesses against him, and in the absence of an attorney to advise him, relied upon representations made by the prosecuting attorney and custodial police, nor was he informed that in the search warrant it was alleged the prop-

erty was taken on a different date than the one on which he was charged; and (e) that he has been unable, after repeated requests, to get true copies of the arrest warrant and complaint in Magistrate Court, or the information and transcript in the Circuit Court, and has been previously unable to prepare properly motions for appropriate remedies.

Conceivably, appellant's attack on the April 22, 1952 conviction as being invalid could affect his subsequent convictions in State v. Meller, Mo., 382 S.W.2d 671 (the steer stealing case), and in State v. Meller, Mo., 387 S.W.2d 515 (the dynamiting case), as in both the prior convictions were alleged and found. Appellant's counsel ingeniously presents this possibility within Burgett v. State of Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319. Both of these cases were subject to the procedure of the Second Offender Act, § 556.280, RSMo 1959, V.A.M.S., wherein the judge assesses the punishment rather than the jury which is limited to a finding of guilt or innocence on the charge for which a defendant is currently being tried.

Appellant presented the following evidence: Louis E. Bredeman testified that he is and was in March, 1952, the official Court Reporter of the then 14th Judicial Circuit, now the 19th Judicial Circuit. (The record entries on the judge's minutes show that on "March 22, 1952, Information filed," and "plea of guilty entered and presentence investigation ordered. 4–22–52, Judgment and Sentence the defendant serve two years * * *.") Counsel for appellant requested of Mr. Bredeman shorthand notes and a transcript thereof. A search was made by him. He was unable to find the notes of March 22 or March 24, 1952. He did find the notes of April 22, 1952, when a motion to modify a divorce decree was being tried, resulting in voluminous notes. No notes were found where appellant was sentenced on that day. "However, the entry of the plea of guilty and the sentencing in 1952 anti-dated the effective date of sub-section (d), of Supreme Court

Rule 29.01; which requires the reporter to record all pleas of guilty of defendants who are not represented by counsel. But, I feel that I did take the plea of guilty, but I have not been able to find my notes."

It was Judge Blair's practice to have Reporter Bredeman to take everything that transpired in court and especially in criminal cases because they had a great number of habeas corpus cases. Mr. Bredeman had been official Court Reporter for one year in March, 1952, but had worked for Judge Blair off and on since in March, 1949. His instructions were to take everything. Mr. Bredeman, in this case, had no independent recollection of whether appellant was informed by the court of the nature of his constitutional rights, but it was Judge Blair's invariable practice to explain to every defendant in criminal cases their constitutional rights, rights of counsel, and that he had a right to trial by jury.

Appellant testified: In explanation of his allegation that he was never accorded the right against self-incrimination, he was never advised of his constitutional rights by the Highway Patrol. "They questioned me constantly; and they gave me a lie detector test and it proved negative." He was in police custody possibly two weeks. The Highway Patrol told him that if he would plead guilty it would go a lot better for him; and the prosecuting attorney kept talking to him and told him if he would plead guilty he would give him a parole or probation. In connection with suggestions of pleading guilty, the nature of the crime of which he was accused was not explained to him. In connection with the range of punishment: "They read something off to me, but I didn't understand it." Appellant had never seen the information or "a copy of anything." Nobody informed him that he could have an attorney without cost. He tried to get his mother to get an attorney, but she was not willing to do so. She did not have any money either, and did not want to mortgage her farm. Appellant, then 21 years of age, did not have any money or property. In connection with his

decision to plead guilty, he did not have any advice of an attorney, and did not have an opinion that he could change the plea, get an attorney and plead otherwise. Appellant did not graduate from high school, and was working around on farms at the time. He did not understand the nature of the accusation against him; was not given the right to meet face to face any person who told facts against him; and in Magistrate Court did not get a chance to read the complaint. He waived preliminary examination because he didn't know what he was doing, but could not recall on whose advice he did waive it. Nobody advised him that he could have an attorney in Magistrate Court.

Appellant thought he was accused of only one crime. "That was all that they told me." In answer to a question as to whether there was anyone associated with him at the time of the alleged crime who was also accused of the crime, appellant answered, "Luther Brown was with me when it happened." He never did see the search warrant. The information alleges the crime was committed on January 23, while the search warrant had allegations that the property described was taken on January 24.

On cross-examination, appellant testified he was 21½ years of age at the time he pleaded guilty, and went to the 9th grade in school. Having only one eye, he could not read and write very much. He had another person help him prepare the pleadings, and told him what to say. He presumed the Magistrate Court read the charges to him in March of 1952, and remembered the part of Riley (the then prosecuting attorney) reading them off to him. "Q. Do I understand you that you were not and you were not asked if you understood the charges? A. I would say I wasn't asked; yes." Mr. Riley promised appellant a bench parole. "Q. Do you think Mr. Riley had it in his power to give you a bench parole? A. Well, his recommendations were always pretty good; the way I heard."

Appellant never made a statement, or gave any confession to the Highway Patrol. He also made no confession, orally or in writing, to the prosecuting attorney. "Q. That's right, sir. But you knew what you were doing when you plead guilty; didn't you? A. No, sir. Q. Do you mean that you didn't know that you were admitting a crime, in open Court? A. I plead guilty to get a parole. Q. But you knew what 'pleading guilty' meant; didn't you? A. Well, it meant for me to get out of jail if I said I done it. Q. Well, you also knew that you were admitting that you had committed a crime; isn't that correct, Mr. Meller? A. If you was going to get out, you— Q. (interrupting) Now, answer my question, Mr. Meller! You knew what a plea of guilty was; didn't you? A. Yeah. Q. Alright. You complain of interrogations yet you gave no statement; isn't that right. A. The record should speak for itself. Q. Answer my question, Mr. Meller! You never gave a statement to the police in any manner or form; did you? A. No."

Appellant was asked what he meant when he testified: " 'Luther Brown was with me when it happened' ?" "Well, we was both arrested accordingly. Q. When it happened? What do you mean by about 'when it happened'? A. Well, when we was charged. We were both arrested. Q. By 'it', do you mean the arrest? A. I suppose." In return for his plea of guilty, the prosecuting attorney offered him parole or probation, "He said he would put me on the street."

On redirect examination appellant testified that he was in jail with several other persons (who had been in jail for a year or so) when he decided to plead guilty. He didn't know the state had any case against him. "I pleaded guilty in order to get out of jail like I was promised."

For the state Judge Riley testified: He was Prosecuting Attorney of Cole County, Missouri, in 1952, knew appellant, and prosecuted him on a charge of burglary and larceny in 1952. He did not promise appellant that he would obtain a parole or probation for him if he would enter a plea of guilty. "A. I know I didn't promise him that because I never promised anybody that. Q. You made no arrangement with him at all for his plea of guilty? A. No, sir. Q. Did you interrogate him before he entered his plea of guilty? A. I don't [know] at what stage of the proceedings, but I asked him, I said: 'Goof, how did you haul all of that stuff in that little Ford?' and he said: 'I made two trips.' That is the only conversation I ever had with him about the whole case. Q. You offered him no reward for pleading guilty? A. No, sir." On cross-examination, Judge Riley testified that he had no recollection one way or the other as to whether appellant was offered counsel on March 22, 1952.

By Point I, appellant claims the trial court erred in its findings of fact, numbered and here discussed as follows:

"1. Movant plead guilty to a charge of burglary and larceny on March 22, 1952, Cause No. 3697, in the Cole County Circuit Court before Judge Same C. Blair." The argument proceeds along the lines that appellant did not plead guilty to burglary and larceny, but only in the manner and form charged in the information, which shows garbled and defective language to the extent that he was not charged with taking and carrying anything away; that such acts were not charged as against the peace and dignity of the state; that these are separate crimes, with separate ranges of punishment; and that the clerk's records show, inter alia, that "the Court advises the defendant of the nature of the crime charged against him and of the range of punishment for such crime," the word "crime" being in the singular.

■ The information charges that appellant did on January 23, 1952, feloniously and burglariously break into and enter a store or shop building by forcibly bursting and breaking an outer door and lock thereon, in which goods and merchandise were

kept (and with intent to steal the same), and although in archaic and jumbled language, the information, fairly read, clearly charges appellant with taking and carrying away certain described merchandise from the building, the property of one Rudolph Fisher. It is further specifically alleged that the acts were against the "peace and dignity of the State." The information clearly charges two crimes: burglary of a store building and larceny of merchandise kept therein. According to appellant himself, these charges were read to him in Magistrate Court, and he remembered the then prosecuting attorney reading them to him. His testimony on this hearing, in answer to a question of whether he knew he was charged with breaking into a place and stealing goods therein, was "Well, I could make out part of it."

■ The clerk's entry of the record of appellant's plea of guilty does recite the "crime" in the singular. Appellant was not then sentenced, but a pre-sentence investigation was ordered. Thereafter, appellant was sentenced on April 22, 1952, the entry for which recites that the court informed him that he had pleaded guilty in the manner and form as charged in the information, allocution was granted, and appellant was sentenced to imprisonment for two years for burglary and two years for larceny. His sentence was clearly for the two crimes. The whole record indicates that appellant understood the charges; he made two trips to carry away the goods; Luther Brown was with him when it happened; and he admits that he pleaded guilty in the manner and form charged in the information. The court's findings of fact No. 1 is not clearly erroneous on this record.

The court's second findings of fact is: "The 'Judge's Docket' does not show offer and waiver of counsel, the Clerk's record does show that Movant was fully informed of his rights and 'waived such right to counsel', (Exhibit #3) and both records show pre-sentence investigation ordered."

■ Standing alone, it is doubtful that the court reporter's testimony that he believed he had taken down appellant's plea (not being able to find his notes thereon), and that it was his instruction to take down the same, and Judge Blair's practice to advise an accused of his right to counsel and jury trial, would be sufficient to show that appellant was advised of such constitutional rights. Taken in connection with the clerk's record entry (superintended by the judge under the requirements of § 483.-140, RSMo 1959, V.A.M.S.), the reporter's testimony tends to lend credence to the accuracy of such record, as concluded by the trial judge here. Appellant states that his objection to the court reporter's testimony is preserved for consideration by this court; he advances no reason why the trial court should have excluded it. See 32 C. J.S. Evidence §§ 581, 582, pp. 710, 711. At any rate, although appellant's cited case of Johnson v. Zerbst, 304 U.S. 458, 58 S. Ct. 1019, 82 L.Ed. 1461, does say that " 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights' " (304 U.S. 464, 58 S.Ct. 1023), that same case has language that the judgment of a court carries with it a presumption of regularity, and that the burden of proof rests upon a defendant to establish that he did not competently and intelligently waive his constitutional right to assistance of counsel (304 U.S. 468, 58 S.Ct. 1019). See also State v. Mountjoy, Mo., 420 S.W.2d 316, 323. As against the presumptive regularity of the court record of March 22, 1952, it was for the trial court to believe or disbelieve appellant's testimony that he was not then advised of his right to counsel before entering his guilty plea. Findings of fact Nos. 6 and 7 relate to appellant's subsequent convictions of stealing cattle, and in dynamiting a building, and are not erroneous because they are borne out by the records. It is not precisely clear why appellant attacks these findings, because they do not bear on the validity of his 1952 guilty plea. Findings of fact No. 10,

wherein the court received the testimony of the reporter concerning Judge Blair's practice of informing criminal defendants of their constitutional rights, was not relied upon solely by the court, as contended by appellant, nor is that testimony discredited.

■ It was for the trial court to determine the conflict in testimony of appellant and Judge Riley as to whether promises or inducements were made to appellant by Judge Riley. Findings of fact No. 12, that the prosecuting attorney did not make such promises and that appellant's testimony in that respect was knowingly and wilfully false, is not clearly erroneous. So also with finding No. 14 in its additional matter that the Missouri State Highway Patrol did not make any promises or inducements for appellant's plea of guilty, or that if he would do so "it would go better with him." The court found by No. 15 that appellant knew he was guilty in 1952 and believed the state could convict him before a jury. There is no inference that the prosecuting attorney thought appellant was a ridiculously stupid person in 1952 when he called him "Goof." Appellant then readily stated that he had made two trips in the little Ford to haul the stolen merchandise. In view of appellant's now intelligent responses to, and even evasion of, answers to questions, the inference is that he was sufficiently intelligent in 1952 to understand the court proceedings, and was not a young illiterate farm boy as he argues.

■ By Point II, appellant contends that he was not informed or accorded his constitutional rights against self-incrimination. Note that appellant testified that he did not make any confession to the Highway Patrol or the prosecuting attorney. There is nothing shown that anything was offered or considered by the court of appellant's guilt other than the plea of guilty. That, of course, does not involve the receipt of constitutionally inadmissible evidence over an accused's plea of not guilty. Appellant's suggestion that he was in po-

lice custody for two weeks, was given a lie detector test (which proved negative) and that the Highway Patrol suggested he plead guilty, even if believed, does not show that any incriminating statements were used against him. The point is obviously without merit.

■ Points III and IV relate to matters discussed above as to appellant not being informed of his right to counsel to assist in his defense, and not being informed of the nature and cause of the accusations against him. Suffice it again to say that contrary to appellant's testimony, the records of the 1952 conviction show that appellant was advised of his right to counsel, and the evidence tends to show that he knew of the nature of the accusation—burglary and larceny. The court found that this was not a silent record, but that the court in 1952 offered appellant counsel and he refused the same. In State v. Scott, Mo., 404 S.W.2d 699, there was no finding of fact on the motion to vacate, when the appellant there, solely on his own testimony, had made a prima facie case that his plea of guilty (in a capital case) was invalidly accepted as obtained without the benefit of counsel. The state there put on no evidence to rebut appellant's case. Other cases cited by appellant such as Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; Tomkins v. State of Missouri, 323 U.S. 485, 65 S.Ct. 370, 89 L.Ed. 407; and Burgett v. State of Texas, supra, have abstract propositions concerning appellant's asserted lack of offer of counsel and lack of waiver thereof, but the trial court here ruled that they were not applicable to appellant under the pleadings, the evidence and the findings of fact. The findings are, in short, not anywhere clearly erroneous under said Rule 27.26, supra.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

**194**

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.