**Ex parte Raymond BLACK.**

**No. 43186.**

Court of Criminal Appeals of Texas.

June 24, 1970.

Dissenting on Denial of Rehearing
Sept. 23, 1970.

Roy Q. Minton, and Charles R. Burton, of Jones, Blakeslee, Minton, Burton & Fitzgerald, Austin, for petitioner.

James B. Kershaw, Dist. Atty., Bastrop, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

WOODLEY, Presiding Judge.

This is a post conviction habeas corpus proceeding in which the petitioner Raymond

Black seeks release from confinement in the Texas Department of Corrections.

He attacks the judgment of conviction in Cause No. 7391 in the District Court of Burleson County in which, on December 6, 1965, petitioner entered a plea of guilty before a jury and his punishment was assessed at life.

The present judge of the District Court in which the conviction was had appointed able counsel to represent the petitioner and a hearing was held.

The record of such hearing and the findings and conclusions of the District Judge, which are favorable to petitioner, were forwarded to this court pursuant to Art. 11.07 Vernon's Ann.C.C.P. The case was filed and submitted on brief and oral argument of petitioner's court appointed counsel.

The indictment in said Cause No. 7391 alleged that on or about the 14th day of November, 1965, Raymond Black did voluntarily and with malice aforethought kill Velma Ryan by shooting her with a pistol. A second paragraph of the indictment alleged a prior final conviction for murder in the same court.

It is clear from the record and from petitioner's brief that the findings and conclusions of the hearing judge are predicated upon the erroneous theory that the punishment was enhanced under Art. 64 P.C. by reason of the prior conviction for the offense of murder in the same court in 1954.

The charge of the court in the murder case in which appellant pleaded guilty reflects that the jury was instructed to find the defendant guilty "and assess his punishment at death or confinement in the State Penitentiary for life, or confinement in the Penitentiary for any term of not less than two years." [1]

Petitioner was sentenced in Cause No. 7391 to "confinement in the State Penitentiary for a term of not less than two (2) years nor more than life." [2]

Jack C. Simpson, a duly licensed lawyer with a law degree from Baylor University, then practicing his profession in Burleson County, was appointed by the court to represent petitioner at his trial on December 6, 1965. [3]

After conferring with and being advised by his counsel, waiver of the ten days time to prepare for trial was filed, 12 jurors were summoned and impaneled and a plea of guilty was entered.

The judgment recites that the defendant (petitioner) in person in open court pleaded guilty to the charge contained in the indictment; that he was admonished by the court of the consequences of said plea and he persisted in pleading guilty, "and it plainly appearing to the court that the defendant is sane, and that he is uninfluenced in making said plea by any consideration of fear, or any persuasion or delusive hope of pardon prompting him to confess his guilt, the said plea of guilty is by the Court received * * *."

In his testimony at the habeas corpus hearing, on direct examination petitioner stated that he told his court appointed trial

---

1. Art. 1257 Vernon's Ann.P.C. provides: "The punishment for murder shall be death or confinement in the penitentiary for life or for any term of years not less than two."

    Art. 64 V.A.P.C. provides: "A person convicted a second time of any offense to which the penalty of death is affixed as an alternate punishment shall not receive on such second conviction a less punishment than imprisonment for life in the penitentiary."

2. Such sentence complied with the indeterminate sentence statute, Art. 775 C.C.P. (1925) now Art. 42.09, V.A.C.C.P., which does not apply to a sentence enhanced under Art. 64 P.C.

3. The statute authorizing the waiver of a jury in a capital case (Art. 1.14 V.A. C.C.P.) was not in effect at the time, but had been enacted as a part of the 1965 Code of Criminal Procedure, effective January 1, 1966. Art. 10a (now Art. 1.13) V.A.C.C.P. did not apply in capital felony cases.

counsel prior to trial that he "had murdered, you know,"—"He kn*owed* I was charged, you know, with murder because I had killed my wife."

"Q. Did you plead 'guilty' or 'not guilty'?

"A. I plead guilty to murder because I did that.

"Q. * * * did the Court talk to you about what your possible sentence could be in this case? Did the Judge talk to you?

"A. The Judge did.

"Q. And what did the Judge say?

"A. The Judge offered me the chair first.

"Q. Speak up.

"A. He offered me the electric chair and then he said life, and I accepted life because I didn't have no money or no help.

\* \* \* \* \* \*

And I kn*owed* that the witnesses and all had told it like it was.

"Q. Did Mr. Simpson talk to you about your case?

"A. No, sir.

"Q. What did he tell you to do?

"A. He didn't tell me anything. We s*i*t there, and when we was talking he said, 'Don't say anything.'

"Q. He told you not to say anything?

"A. Yes, sir."

On cross-examination at the hearing he testified in part:

"Q. You made a statement—you gave a confession, didn't you?

"A. Yes, sir, I gave a confession on this but it was supposed to be seven witnesses.

"Q. In other words, this crime was committed in the presence of seven people?

"A. But at the time * * *

"Q. Don't go into that; just answer the question. Mr. Minton will ask you any question about that, that he desires, I'm sure. In other words, you committed the crime in the presence of witnesses?

"A. Seven witnesses was supposed to know something about it.

"Q. And you gave a statement, did you not?

"A. Yes, sir.

"Q. And you knew what you were charged with?

"A. I knew I was charged with murder."

■ The facts that his court appointed counsel had never represented a litigant in a contested criminal case before a court or before a jury; that time for preparation for trial was waived; that counsel conferred very briefly with his client; that only 12 veniremen were summoned and that the prior conviction alleged in the indictment was not a final conviction because the sentence was suspended, do not sustain the finding of the District Judge that petitioner is not lawfully confined and is entitled to be released to the custody of the Sheriff of Burleson County to stand trial on the indictment in Cause No. 7391.

■ The opinions of the Supreme Court of the United States in McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed. 2d 763; Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747; and Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785, handed down May 4, 1970, sustain our conclusion that under the facts petitioner's guilty plea entered with assistance of counsel, though it may have been induced by his prior voluntary confession and though motivated by a desire to avoid the death penalty, was a

voluntary plea and his confinement under sentence of not less than two years nor more than life is not unlawful.

The relief sought is denied.

Rehearing denied.

## DISSENTING OPINION ON MOTION FOR REHEARING

MORRISON, Judge.

My brethren overruled the petitioner's motion for rehearing without written opinion. Upon further examination of the record I have concluded that we were in error and must therefore dissent, even if it is belated.

In our original opinion we overlooked Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319. Burgett offered no defense and the only harm he was able to show was that four prior void convictions which were alleged in the indictment were read to the jury. This petitioner, at the habeas corpus hearing, offered no defense to the murder charge to which he had plead guilty. In his case a prior non-admissible murder conviction was read to the jury from the indictment, and they were instructed that they might consider the same in assessing the petitioner's punishment. All this occurred without a word of protest from Attorney Simpson, who I have now concluded was incompetent.

In McMann, supra, three relators urged, in habeas corpus writs, that their convictions be reversed, because they had entered guilty pleas following coerced confessions. Each of the relators also urged at least one other ground for relief; relator Richardson alleged that his counsel had been inadequate. The Supreme Court held that a guilty plea "based on reasonably competent advice" is not subject to attack. In footnote No. 14, the Court asserted the following:

"Since Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), it has been clear that a defendant pleading guilty to a felony charge has a federal right to the assistance of counsel. See White v. Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963); Arsenault v. Massachusetts, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968). It has long been recognized that the right to counsel is the right to the effective assistance of counsel. See Reece v. Georgia, 350 U.S. 85, 90, 76 S.Ct. 167, 170, 100 L.Ed. 77 (1955); Glasser v. United States, 315 U.S. 60, 69–70, 62 S.Ct. 457, 464–465, 86 L.Ed. 680 (1942); Avery v. Alabama, 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940); Powell v. Alabama, 287 U.S. 45, 57, 53 S.Ct. 55, 59–60, 77 L.Ed. 158 (1932)."

While the court denied any relief to the relators which was based on their assertions of coerced confessions, they remanded the cases to the Court of Appeals for consideration of the other grounds for relief, including the allegations of incompetent counsel.

In Brady v. U. S., supra, and Parker v. North Carolina, supra, the Supreme Court found that the relators' guilty pleas were entered with the assistance of competent counsel, so they are not in point here.

Petitioner's primary contention is that he was denied effective assistance of counsel. Without at this time considering defects in the trial which may be waived by a guilty plea, I hold that due to ineffective assistance of counsel, petitioner was deprived of his unwaivable right to trial by jury in a capital offense. The circumstances which lead me to hold that this trial was a "mockery of justice" are as follows.[1]

Petitioner was arrested on November 15th, 1965, and was held without bail until his trial on December 6th. The indictment for murder with malice also alleged a prior final conviction for a capital offense.

1. Williams v. Beto, 354 F.2d 608, 704 (5th Cir., 1965).

Mr. Simpson talked for a few minutes with petitioner on December 4th to determine if petitioner would hire him. On December 6th, Simpson was appointed to represent petitioner, pursuant to petitioner's request that an attorney be appointed to represent him. He conferred briefly on December 6th with petitioner, prior to trial. Although Simpson testified that he told petitioner what he was charged with, there is no evidence that any discussion was had about the facts of the case. The district court found that Simpson "made substantially no investigation to the facts of petitioner's case, or of the law applicable to the facts, and specifically he did not inquire into the validity of his alleged prior conviction."

Simpson waived in writing the statutory ten days for preparation for trial, and the petitioner, on the attorney's advice, also signed the waiver form. The district court, at the writ hearing, found that petitioner "did not intelligently waive his right" for the ten days preparation time.

The trial court, on December 6th, apparently on its own motion, directed the sheriff to summon a special venire from which to empanel a jury to hear the cause. The sheriff summoned 12 persons, and these 12 served as the jury.

Still on December 6th, petitioner plead guilty to the indictment before the jury. There is no indication that evidence was heard, although the State did summon witnesses for the trial. The jury was then instructed to find the defendant guilty and to assess his punishment "at death or confinement in the State Penitentiary for life or * * * for any term of not less than two years." The charge also contained the allegation of the prior final conviction of a capital offense. Simpson never complained about the impropriety of the charge. The allegation of a previous final conviction was clearly erroneous as petitioner had received a suspended sentence in the previous conviction and there is no indication that the conviction had been made final. Although the court's instructions did not

properly charge on an enhancement count, the incluson in the indictment and charge to the jury of a prior final conviction was highly prejudicial. I mention this only as a further indication that Simpson did not perform adequately as petitioner's attorney; compare with Burgett v. State, supra.

The jury returned a verdict of guilty, assessing punishment at life.

Under the old Code of Criminal Procedure a defendant charged with a capital offense, in this case, murder with malice, could not waive his right to a trial by jury, Article 10a, V.A.C.C.P. (1925). A guilty plea, although permissible, resulted in an instructed verdict of guilty with punishment being assessed by the jury. There were also certain procedural rules regarding jury selection in capital offenses. Article 587, V.A.C.C.P. (1925), provided for a special venire of not less than 36 persons in capital cases. Article 600, V.A.C.C.P. (1925), required that a copy of the names of persons summoned under a special venire be delivered to the defendant and Article 601, V.A.C.C.P. (1925), provides that he must receive this list at least one day prior to trial. The district court found that petitioner did not waive his right to 36 veniremen or to a copy of the venire list one day in advance of trial. See Wright v. State, (1970) 458 S.W.2d 79; Marshall v. State, 444 S.W.2d 928.

On December 6th, the day of the petitioner's trial, Mr. Simpson was also appointed to represent seven (7) other felony defendants. On that same day seven (7) entered guilty pleas, as did two (2) other felony defendants that Simpson represented on that day. Of these nine (9) defendants, six (6) received prison sentences and three (3) received probated sentences. These three were subsequently granted a new trial in which the cause was dismissed.

December 6th was not the only date on which Mr. Simpson represented numerous "guilty" defendants. On May 31, 1965, Mr. Simpson was appointed to represent six (6) felony defendants who plead guilty

to a total of eight (8) crimes on that same day. Of particular interest are the cases of one Curtis Lacey who entered guilty pleas on two separate felony charges on May 31st, while being represented by Mr. Simpson. In each of Mr. Lacey's cases, the court, on its own motion granted a new trial for the reason that Lacey was under the age of seventeen. These cases may be some indication of the amount of preparation involved in Simpson's practice of criminal law.

Mr. Simpson was licensed to practice law in 1961 and was employed for a period of time by an oil company. He moved to Caldwell in September of 1964 where he practiced until 1966 when he ceased to pay his Bar Association dues. As stated in the majority opinion, Mr. Simpson has never represented a litigant in a contested criminal case; he has also never represented a litigant in a contested civil case.

Considering the totality of the above circumstances, I conclude that the purported trial of Raymond Black was a mere "sham",[2] and therefore we should grant his writ of habeas corpus.