STEPHEN TREADWELL v. STATE OF INDIANA.

[No. 272A77. Filed June 6, 1972. Rehearing denied June 20, 1972. Transfer denied November 21, 1972.]

*Hall Cochrane,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *William D. Bucher,* Deputy Attorney General, for appellee.

WHITE, P.J.—Defendant-appellant Treadwell's court appointed appellate counsel has managed to crowd into a rather short brief a remarkable number of suggestions of error in this appeal from a ten to twenty-five year robbery sentence[1] imposed following conviction at a trial without jury. Because the logic, authority, and record to support those suggestions

---

1. Ind. Ann. Stat. § 10-4101 (Burns 1956), IC 1971, 35-13-4-6, reads in pertinent part:

"Whoever takes from the person of another any article of value by violence or by putting in fear, is guilty of robbery and upon conviction shall be imprisoned not less than ten years nor more than twenty-five years. . . ."

By Ind. Ann. Stat. §§ 9-1820, 9-1821 (Burns 1956), IC 1971, 35-8-2-2, 35-8-2-3, the court is required to sentence a convicted felon "for a term not less than the minimum time prescribed by the statutes . . . and not more than the maximum time prescribed. . . ." The Supreme Court of

are so weak, while the possibilities they portend are so grave, we have taken great care to read the entire record very carefully, including the complete transcript of the trial proceedings. That study has convinced us beyond any doubt that defendant had a fair trial and that the evidence of his guilt was both substantial and of sufficient probative value to convince any prudent mind beyond a reasonable doubt that defendant is guilty of the offense with which he is charged.[2] If there were irregularities in the proceedings they have not operated to deny defendant a fair trial nor to produce reversible error. The judgment must be, and is, affirmed.

This opinion should and would have ended here but for the Supreme Court's Rule AP. 11(B)(2)(e) which requires that we "give a statement in writing of each substantial question arising on the record and argued by the parties." We therefore state only what we believe will demonstrate to the parties that we have given consideration to every question argued (some of which are not "on the record") and have found that none are substantial.

There were but three witnesses at the trial: the victim, the arresting officer and the defendant. From a careful

---

Indiana has held that such an indeterminate sentence is for the maximum time (e.g., twenty-five years in this case). *Moore* v. *State* (1972), 257 Ind. 584, 28 Ind. Dec. 669, 276 N. E. 2d 840; *Boyd* v. *State* (1971), 257 Ind. 443, 28 Ind. Dec. 40, 275 N.E. 2d 797.

The Indiana Constitution, Article 7, § 4 (effective January 1, 1972) requires "that appeals from a judgment imposing a sentence of . . . imprisonment for a term greater than ten years shall be taken directly to the Supreme Court."

The Supreme Court has nevertheless adopted Rule AP 4(A)(7) which gives it exclusive jurisdiction of "[a]ppeals in criminal cases from judgments (sentences) imposing a sentence of death, life imprisonment or a *minimum* sentence of greater than ten [10] years". AP 4(B) provides: "In all other cases, appeals shall be taken to the Court of Appeals. . . ." (Our emphasis.)

While we do not agree with the Supreme Court's interpretation of Art. 7, § 4, as set forth in AP 4(A)(7) and AP 4(B), we do consider ourselves duty bound to follow it. "[I]t was the law as the Supreme Court construed and held it to be which invested the Appellate Court with jurisdiction. . . ." *Pittsburgh, etc., R. Co.* v. *Peck* (1909), 172 Ind. 562, 577, 88 N. E. 939.

2. *Vuncannon* v. *State* (1970), 254 Ind. 206, 258 N.E. 2d 639, 640, 21 Ind. Dec. 511, 513.

reading of their testimony we find that most of the facts are undisputed.

On Saturday night, July 10, 1971, about ten o'clock, the victim was robbed of twenty-six dollars in United States currency on a sidewalk in front of a tavern he had just left. Immediately prior to the robbery the appellant-defendant had walked across the street with another man. When defendant and that other man came close to the victim, an altercation ensued. In that altercation the victim was beaten with someone's fists and the paper money was torn from his pocket. The two men then ran from the scene. The other man fired two shots from across the street and what then became of him is unclear, but it is conceded that he took the victim's money with him. Defendant, however, was pursued and caught by the victim (and by the victim's nephew who was standing nearby) about four or five blocks from the tavern. He was held until police arrived and arrested him. Defendant had no weapon of any kind on his person at the time he was arrested and there is no testimony concerning whether he had any money or anything else, except that he did not have the money taken from the prosecuting witness. Defendant gave a statement (apparently oral) to the arresting officer in which he denied having robbed anyone. What else he told the officer is not in evidence.

There is conflict in the evidence with respect to whether defendant participated in the taking of the money by force from the victim's person. The victim testified repeatedly that both men beat him, although he could not say which of the men struck him first nor did he know which man took the money from his pocket.

Defendant testified and admitted that he did cross the street with the other man but maintained that he was walking with him purely by coincidence; that he had never seen the other man before and did not know who he was. He further testified that when he first saw the "victim" he (the victim) was lying down and that "[h]e jumped up and he had a

hookbill[3] and cut and hit me." The nephew then joined the fight and defendant thought he was in great danger from the hookbill and that they were trying to rob him. Defendant did not see the man who walked across the street with him after the victim and nephew jumped onto defendant, although defendant did hear shots being fired as he ran from the scene.

We assume it is unnecessary to say anything further in regard to the sufficiency of the evidence except to note that the record contains no mention of the failure of the State to produce the nephew as a witness even though his name is endorsed as such on the affidavit. Appellant's brief suggests the State's failure to show any excuse for not calling him raises an "adverse presumption."[4] If so, its weight was for the trier of fact as was the weight of defendant's exculpating testimony. No rule of law nor of reason of which we are aware could logically assign to either of these factors an arbitrary or fixed weight. No reviewing court is in any position to say that these factors carry sufficient weight to tilt the scales of justice to the point of indicating that the guilty finding is not sustained by substantial evidence of probative value. On the contrary, the weight of any particular witness' testimony (or failure to testify) is for the trier of fact to determine.[5]

Among other points appellant attempts to raise is jurisdiction. Because (as he contends) the record is silent as to any preliminary hearing having been held,[6] appellant contends the trial court was without jurisdiction. While it is true that Ind. Ann. Stat. § 9-704 (Burns

---

3. On cross-examination defendant testified that a "hookbill" is a knife. The victim denied having a knife that night but admitted having carried a "case" (apparently a type of knife) which he "had" that night, but whether he meant to say he had it with him is unclear.

4. Similar arguments were rejected in *Denton* v. *State* (1965), 246 Ind. 155, 158, 160, 203 N. E. 2d 539, 540, 541, 4 Ind. Dec. 420, 422, 423.

5. *Stuck* v. *State* (1970), 255 Ind. 350, 264 N. E. 2d 611, 613, 24 Ind. Dec. 46, 51; *Barnes* v. *State* (1965), 246 Ind. 485, 205 N. E. 2d 539, 5 Ind. Dec. 158.

6. The record, certified to this court in response to defendant-appellant's praecipe for "the entire record in the above captioned cause"

1956), IC 1971, 35-1-8-1, requires that every person arrested without a warrant, or on a warrant issued by a magistrate, must be taken before the issuing magistrate or the nearest magistrate for a hearing[7] and failure so to do within a reasonable time after such an arrest may well have consequences unfavorable to the State, it has never been held (in Indiana) that loss of jurisdiction is one of them. The fact that defendant is present in court is sufficient to give the court criminal jurisdiction of his person and how he got there has no bearing on jurisdiction although it may have other consequences.[8]

Jurisdiction of the subject matter is conferred by law and we judicially know that the Criminal Court of Marion County has jurisdiction of all felonies.[9] Jurisdiction of the particular case was conferred by the filing of the affidavit (information).[10] It is defendant's conten-

---

begins with the filing of the Affidavit in the Criminal Court of Marion County on August 3, 1971, and the issuance of a *capias* (warrant for arrest) on that same date. Although the return endorsed on the *capias* shows that defendant was taken into custody on August 4, 1971, the only police officer who testified at the trial said that he arrested defendant on July 10, 1971, and took him "straight to jail". There is no trial testimony or record that he was ever released from custody or that there were ever any proceedings between July 10 and August 3, 1971, in any other court such as the Municipal Court of Marion County. The motion to correct errors does, however, contain the unverified allegation that "[o]n the 11th day of July, 1971, a hearing *in this matter* was held in the Municipal Court of Marion County, Room 10, at which hearing the defendant appeared without counsel and at which hearing he was not advised of his right to counsel." (Our emphasis.)

Technically, then, it may be true that there is nothing in the record to show that a preliminary hearing was held, but it does appear that the record is probably not complete. It would seem to be a fair guess that at the Municipal Court hearing on July 11, 1971, defendant was "bound over" or "recognized" to the Criminal Court. Although a new affidavit was filed in the Criminal Court and a new warrant (*Capias*) issued and served, the preliminary hearing in Municipal Court was "just one of the normal steps in the criminal justice process of reaching a final disposition of . . . [this] case through the criminal court system as it exists in law and fact." *Flick* v. *State* (1971), 150 Ind. App. 2, 274 N. E. 2d 725, 727, 27 Ind. Dec. 551.

7.  See *Penn* v. *State* (1961), 242 Ind. 359, 177 N. E. 2d 889, 179 N. E. 2d 283.

8.  *Dickens* v. *State* (1970), 254 Ind. 388, 260 N. E. 2d 578, 579, 22 Ind. Dec. 164.

9.  Ind. Ann. Stat. § 4-5704 (Burns 1968), IC 1971, 33-9-1-4.

10. *Nahas* v. *State* (1939), 215 Ind. 614, 21 N. E. 2d 140. *State* v.

tion that if he did have a preliminary hearing on July 11, 1971 (as his own motion to correct errors asserts he did have) he could legally be held for only seven days after that hearing, yet he was held for 20 days after July 11, 1971, before he was charged by affidavit (information) in the Criminal Court. As to that contention we need only note that it is founded on a misapplication to this case of the provisions of Ind. Ann. Stat. § 9-704a (Burns 1956) which created (in 1949) "an additional and alternative pleading and procedure . . . known as the preliminary charge" whereby persons arrested on reasonable belief that they had committed a felony but under circumstances "which might or could negative" their participation in the crime can be held to bail "for a period not exceeding seven days" unless an "affidavit or indictment be filed against said person." That statute obviously has no application to the prosecution of an accused arrested without warrant and later afforded a preliminary hearing pursuant to Ind. Ann. Stat. § 9-704 (Burns 1956) on an affidavit charging the felony for which he was arrested. In a § 9-704 hearing the authority of the magistrate is limited to the discharge of the accused or to his recognizance to the criminal court.[11] Appellant has wholly failed to show that he was not properly bound over to the Criminal Court after a § 9-704 preliminary hearing in Municipal Court. Furthermore, his unverified assertion in his motion to correct errors

---

*Vega* (1968), 78 N. M. 525, 433 P. 2d 504, cited by appellant, does not hold that a preliminary hearing is a condition precedent to a trial court gaining jurisdiction. It does say, however, that *State* v. *Vaughn* (1964), 74 N. M. 365, 393 P. 2d 711, had "held that the jurisdiction of the district court acquired by the filing of the information [affidavit], may be lost 'in the course of the proceeding' by failure to remand for a preliminary examination when its absence is timely brought to the court's attention". Had defendant timely and properly brought to the trial court's attention that he had no preliminary hearing we might now have before us an issue to which these New Mexico citations could be pertinent.

11. By statutory definition (§ 9-704) as well as traditional usage "[t]he term 'magistrate' . . . include[s] and mean[s] any justice of the peace, city judge or mayor acting as a city judge." Municipal court judges are city judges and magistrates within this definition. *State ex rel. Hale* v. *Marion Municipal Court* (1955), 234 Ind. 467, 475, 127 N. E. 2d 897, 900.

that he had no attorney at that hearing and was not advised of his right to counsel is not only unsupported by the record, but there is no showing that the preliminary hearing (or even the want of hearing, if none was held) had any consequence other than to hold defendant in custody in lieu of reasonable bail until the affidavit was filed against him in Criminal Court. Absent some plausible suggestion that whatever occurred (or failed to occur) between defendant's arrest and the filing of the affidavit in Criminal Court had consequences which affected the fairness of defendant's trial (either in fact or in presumption of law) we consider it our duty to treat such questions as moot.

The same reasoning applies to the *ex parte* hearing held by the Master Commissioner on August 3, 1971.[12]

It is also contended that defendant had no opportunity to consult with counsel prior to arraignment, at which time he signed a written waiver of jury trial, characterized in the motion to correct errors as a "waiver [which] was not, and could not, have been freely and intelligently waived since the defendant had not had a prior opportunity to consult with counsel." Whatever weight that

---

12. The only record of such hearing is this (apparently "rubber stamp") endorsement on the affidavit and on the *capias* (warrant):
"8-3-71

"Comes now the Court, by the Master Commissioner thereof, and hearing having been had upon the issue of probable cause, and the Master Commissioner having examined the affidavits herein pertaining to the existence of probable cause for the issuance of a Capias now finds that probable cause exists for the issuance of a Capias (Warrant for arrest) in this cause, and orders Clerk to issue Capias and to set bond in accordance with its bond schedule duly adopted by the Court.

"Ralph N. May
Master Commissioner
Criminal Court of
Marion County."

So far as we can determine from the record this hearing was without purpose or consequence. There is no showing that the warrant issued pursuant to the Commissioner's finding of probable cause was used either to effect defendant's arrest (which had already occurred some twenty-five days earlier without a warrant) or as authority to conduct a search. See *Kinnaird* v. *State* (1968), 251 Ind. 506, 242 N. E. 2d 500, 16 Ind. Dec. 250.

assertion might otherwise carry is weakened by the fact that: 1) it is not verified; 2) the waiver is witnessed by the Public Defender who entered his appearance that same day and represented defendant in his court trial which took place some five weeks later. Absent any indication to the contrary we must presume that defendant and his Public Defender conferred at least once in preparation for the trial and that his attorney made certain that defendant understood his right to a jury trial and his right to waive it as well as his right to apply to the court to be relieved of the arraignment-day waiver if he wishes not to be bound by it.[13] No such request having been made and no reason being suggested for not raising the question of the validity of the waiver prior to trial, we perceive no error on the trial court's part in rejecting it when first asserted in the motion to correct errors.

Defendant makes a two pronged attack on the trial court's refusal to grant his oral *pro se* request for a continuance when he and his attorney appeared for trial on September 16, 1971. Without citing authority to sustain either position, defendant first asserts that the judge *pro tempore* who presided at his trial erred in not advising defendant that he was not the regular judge and that defendant was entitled to be tried by the regular judge. Secondly he contends that it was an abuse of discretion to deny the request for a continuance after the State had had a continuance without any showing (on the record) of any reason therefor. At the time the *pro se* request for continuance was made, defendant's Public Defender had already announced he was ready for trial. The defendant was then asked why he wanted a continuance. He said: "I just want a continuance." The Public

---

13. Attorney and client met at least once between arraignment and trial. The record shows they both appeared for trial on August 20, 1971, at which time the State obtained a continuance to September 16, 1971. We need not here comment on what showing might have been necessary to have entitled defendant to leave to withdraw his jury waiver or to have rendered a denial of leave reversible error, had such leave been timely requested.

Defender then stated: "I have discussed this with my client and with the prosecutor, and I have gone over all their evidence that they intend to present, and I feel that I am ready."

That record suggests no abuse of discretion in denying the continuance, nor has the defendant offered anything to suggest any harm from the denial. And not only is there no authority for the assertion that a defendant is entitled to be tried by the regular judge, but the applicable statute (Ind. Ann. Stat. § 4-5711 [Burns' 1968], IC 1971, 33-9-2-1, Acts 1883, Ch. 4, § 1), provides that a judge *pro tempore* of criminal court "shall have the same power and authority during the continuance of his appointment as a regularly elected judge of said court."[14]

And finally appellant makes the argument that the trial court should have imposed a lighter sentence by finding defendant guilty of the lesser included offense of Assault and Battery. We have already determined that there was substantial evidence of probative value sufficient to prove every element of the crime of robbery beyond a reasonable doubt. A trial judge, convinced beyond a reasonable doubt by substantial evidence of probative value that a defendant is guilty of the crime charged is under no duty to find him guilty of a lesser included offense. Indeed the opposite appears more reasonable and logical. Counsel's implication that the trial judge was improperly influenced against finding defendant guilty of a lesser included offense by defendant's testimony on direct examination and cross-examination that he had a record of prior convictions is not well taken.[15] Nor does he support by authority his suggestion that it was a denial of due process for the judge to fail to seek out by interrogation of defendant whether those prior

14. See also *State ex rel. Freeman* v. *Superior Court of Marion County* (1940), 216 Ind. 372, 24 N. E. 2d 928.

15. The trial judge is an experienced lawyer well schooled in the rule liimting the effect of such evidence to the issue of credibility and we are satisfied (in the absence of anything to indicate the contrary) that he scrupulously followed the rule.

convictions were constitutionally valid by *Gideon* standards.[16] The authority cited holds merely that under some conditions it can be reversible error to admit evidence of prior convictions which are shown to be presumptively void for denial of right to counsel,[17] but when nothing indicates that right to counsel was denied, prior convictions are not presumptively void.[18] No authority has been found to support the suggestion that any duty rests on the trial judge, *sua sponte,* to require proof of the validity of prior convictions not presumptively void.[19]

Judgment affirmed.

Buchanan, J. and Sullivan, J., concur.

NOTE.—Reported in 283 N. E. 2d 397.

---

16. *Gideon* v. *Wainwright* (1963), 372 U. S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, 93 A. L. R. 2d 733.

17. *Burgett* v. *Texas* (1967), 389 U. S. 109, 88 S. Ct. 258, 19 L. Ed. 2d 319.

18. Id., 389 U. S. at 115; *Spencer* v. *Texas* (1967), 385 U. S. 554, 17 L. Ed. 2d 606, 87 S. Ct. 648.

19. At no time has appellant asserted or suggested that he was not in fact adequately represented by counsel in these prior cases.