Clyde **BATES**, Petitioner,

v.

**Louis S. NELSON, Warden of San Quentin Prison at San Quentin, California, Respondent.**

**Manuel Joe CHAVEZ, Petitioner,**

v.

**Louis S. NELSON, Warden of San Quentin Prison at San Quentin, California, Respondent.**

Nos. C–41325, C–41326.

United States District Court,
N. D. California.

Sept. 24, 1971.

As Amended Sept. 30 and Nov. 18, 1971.

Norman Leonard, of Gladstein, Andersen, Leonard, Sibbett & Patsey, Ruth Jacobs, San Francisco, Cal., for petitioners.

Charles R. B. Kirk, Deputy Cal. Atty. Gen., Albert W. Harris, Jr., Asst. Cal. Atty. Gen., San Francisco, Cal., for respondent.

## ORDER DENYING PETITIONS FOR HABEAS CORPUS AND DISMISSING ACTIONS

OLIVER J. CARTER, Chief Judge.

The two petitioners in this action are state prisoners convicted of first degree murder and arson in the Superior Court in and for the County of Los Angeles in 1957. They have pursued numerous direct and collateral remedies during the intervening years. Histories of the various phases of this litigation can be found in Chavez v. Dickson, 300 F.2d 683 (9th Cir. 1962) and Bates v. Wilson, 385 F.2d 771 (9th Cir. 1967). Petitioners filed the instant actions, petitions for habeas corpus, on February 26, 1963. The petitions were denied in part on February 24, 1964 by this Court. (226 F.Supp. 983 (1964)). On May 11, 12, 13, 14, 18, 19 and 22, 1964, live testimony was taken on other portions of peti-tioners' claims and an adverse decision on the entire petitions was rendered on June 29, 1966. Subsequently the United States Court of Appeals for the Ninth Circuit affirmed this Court's decision. Bates v. Wilson, 385 F.2d 771 (9th Cir. 1967). The Supreme Court vacated that decision and directed reconsideration in light of several new cases. Bates v. Nelson, 393 U.S. 16, 89 S.Ct. 50, 21 L.Ed.2d 21 (1968). In turn the United States Court of Appeals for the Ninth Circuit has remanded the case back to this Court for further proceedings in light of the Supreme Court's directive.

Two issues are presented to the Court at this time. One is common to both petitioners, while the other applies only to petitioner Bates.

The petitioners' contentions are that the confessions or admissions of a co-defendant prejudiced the jury against them and also that the use of Bates' prior convictions was error. Both of these contentions were dealt with summarily by this Court prior to the habeas corpus hearing on the basis of then existing law. Bates v. Dickson, 226 F. Supp. 983 (1964). During the intervening years Supreme Court decisions have greatly changed the applicable law, so that both contentions must be reconsidered at this time.

The Supreme Court has directed the Ninth Circuit, and the Ninth Circuit this Court, to reconsider petitioners' claims in the light of Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 100 (1968).

## THE BRUTON CLAIMS

At the trial in the instant case two confessions or admissions were introduced into evidence. One was the confession of the co-defendant Hernandez who did not take the stand. Another was that of Oscar Brenhaug who was not indicted and who testified for the prosecution. Brenhaug was cross-exam-

ined by defendant's counsel. The jury was given the usual instruction that they were only to consider the Hernandez confession against its author and not the other defendants who might have been named in its passages.

■■ The petitioners claim that this procedure violated their right to confront witnesses against them and therefore was error under the subsequent Supreme Court decision Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). It is quite clear that *Bruton* error occurred with respect to the Hernandez confession. It is also clear, however, that the Brenhaug confession and/or testimony was not so tainted. Oscar Brenhaug testified and was cross-examined; the basis for any claim under *Bruton* was destroyed. Mitchell v. United States, 434 F.2d 230 (9th Cir. 1970).

Subsequent to the initial petition on this issue the Supreme Court decided Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). *Harrington* held that the harmless error rule may be applied to *Bruton* errors. Petitioners have filed full and complete memoranda on the question of whether the harmless error rule is appropriate in the circumstances of this case.

This Court completely reviewed the entire transcript of this case during its deliberations in 1964. It has now, with the benefit of petitioners' and respondent's memoranda, made a new partial review. Based upon these examination of the record the Court concludes that any error committed in the use of the Hernandez admissions was harmless beyond a reasonable doubt.

The evidence in the case against both Bates and Chavez was overwhelming. The testimony of the defendants themselves, as well as numerous eyewitnesses, some of whom knew Bates, placed the defendants as well as Hernandez and Brenhaug at the place of the crime at around 10:00 in the evening. There is no question that there was at that time a fight during which Bates, Chavez and Hernandez were forcibly ejected. Brenhaug shortly thereafter left voluntarily and accompanied them. The evidence thus supplies a basic motive for the subsequent crime, viz., revenge for the ejection and beating.

Oscar Brenhaug placed himself, Bates, Chavez and Hernandez together both at the time of the altercation at the Mecca Bar and throughout the later portions of the evening. He substantiated the testimony of the gas station attendant that gasoline was purchased. He established that the defendants Bates and Chavez took the gasoline to the Mecca Bar and returned hurriedly. Eyewitnesses at the bar identified Bates and Chavez as the perpetrators. Portions of the floor mat of Bates' car reeked of gasoline, as did Bates' boot.

Without elaborating upon the above it is quite clear not only that the defendants committed the crime alleged, but that the error with respect to the Hernandez statement was harmless beyond a reasonable doubt.

Chavez' defense was that he was not present and did not participate. This was belied by all of the pertinent identification testimony. Bates claimed that if he did commit the acts alleged that he was intoxicated to the extent that he could not entertain the requisite intent. This claim was belied by numerous acts which revealed a quite purposeful and deliberate course of conduct. Not only could a jury have concluded that the defenses could be ignored in light of the evidence, but I find that the jury inescapably would have so concluded regardless of the Hernandez admissions.

At most the Hernandez admissions provided the prosecution with a neat summary of all the large events, and minutia involving the foursome during the evening of April 4, 1957. This Court cannot imagine any jury that heard all the evidence, save the Hernandez admissions, would have concluded otherwise than that the defendants were guilty as charged. The prosecution presented a tight case that pinned the

defendants down to time and place at every relevant time. An additional or supplementary account of the same events in such a situation may not, and this Court holds herein, did not play a significant role in the minds of the jury.

It is the finding and conclusion of this Court, therefore, that the admission of the confession of Hernandez was harmless error beyond a reasonable doubt.

## THE BURGETT CLAIMS

Burgett v. Texas, *supra,* held that prior convictions which had been obtained in violation of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L. E.2d 799, i. e., defendant not represented or affirmatively waived representation by counsel, could not be used to support guilt or to enhance punishment. Subsequently in Shorter v. United States, 412 F.2d 428 (1969) the Ninth Circuit has had occasion to comment both upon the application of the *Burgett* rule and upon the instant case in particular.

The *Shorter* case involved a defendant who decided to testify in his own behalf and was then advised that the prosecution would introduce prior convictions to impeach his testimony. The certified record of the prior convictions did not reveal that Shorter had been represented by counsel. Accordingly it was assumed that he was not. Burgett v. United States, *supra.* The Court held that it need not consider whether the use of prior convictions for impeachment came within the "support guilt or enhance punishment" language of *Burgett.* The court upheld the conviction because counsel for Shorter introduced the prior convictions upon direct examination as a trial tactic and thus preempted any contemplated use by the prosecution. Upon a motion for reconsideration the court discussed the instant case as follows:

"Actually the case (Bates v. Nelson) was remanded 'for further consideration in the light of Burgett v. Texas, Bruton v. United States, and Roberts v. Russell.' (Citations omitted) The issue common to Bates v. Nelson and

the three cases cited in it—*Burgett, Bruton* and *Roberts,* concerned cautionary instructions. But the case at bar has no such link.

"We suggest that the Supreme Court in *Bates* was simply telling this court to reexamine our conclusion that a limiting instruction fully protected the accused; for that proposition we had relied upon Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278, a case expressly overruled on that point in *Bruton. Bruton, Burgett,* and *Roberts* provided helpful guidelines as to the efficacy or lack of efficacy of such instructions. See also Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969) also involving *Bruton.*" (412 F.2d p. 435)

Whatever the merits of the dicta of the Ninth Circuit it is clear that the *Shorter* decision has left open the question of the use of invalid prior convictions for impeachment purposes.

■ The opinion in *Shorter* did not specifically hold that *Burgett* was to be given retroactive application, but in a footnote (Note 1, p. 1) the court observed that *Shorter* had been tried nearly two months before the *Burgett* opinion. Since the court then proceeded to deal with the merits of the *Burgett* claim it must be assumed that retroactive application is contemplated. The dissent in *Shorter* contended that use of prior convictions for impeachment should fall within the *Burgett* rule. The dissent further contended that a harmless error rule could not be applied to such evidence.

■ This Court believes that the harmless error rule is applicable to *Burgett* errors, particularly when the prior convictions were only used for impeachment.

The pertinent portion of the *Burgett* decision stated that:

"The admission of a prior criminal conviction which is constitutionally infirm under the standards of Gideon v. Wainwright is inherently prejudicial

and we are unable to say that the instructions to disregard it made the constitutional error 'harmless beyond a reasonable doubt' within the meaning of Chapman v. California, 386 U. S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705." (389 U.S. p. 115, 88 S.Ct. at p. 262)

It is the opinion of this Court that the Supreme Court was referring to the particular facts of the *Burgett* case in declining to utilize the harmless error concept. Furthermore that opinion concerned itself primarily with the effectiveness of corrective instructions to render errors harmless.

The language does not indicate any hard and fast rule against ever applying harmless error standards to a trial in which a *Burgett* type error occurred. In the instant case four prior convictions of Bates were referred to in the indictment and discussed both by the defense and the prosecution. Subsequently the jury was instructed to consider the convictions for impeachment purposes only.

The first offense (car theft) was committed while the defendant was 16 years old (1938). This offense was discussed by both counsel in the context of a juvenile offense, though Bates was tried in an adult court and received a penal sentence. The certified copy of the conviction does not reveal that Bates was represented by an attorney at the time of that conviction.

Of the three later convictions, one affirmatively shows that the petitioner was represented by counsel. The certificate of conviction from the United States District Court for the Middle District of Pennsylvania indicates that Bates pled guilty represented by Joseph G. Colleran, Esq. appointed by the Court. That conviction, for attempted escape from a Federal Penitentiary, was entered on March 18, 1940.

The last two convictions were both entered in the Criminal Court of Hamilton County, State of Tennessee, on August 8, 1947. The two convictions were for burglary of a business house and larceny of an auto. It is not clear whether the same act was involved, though the sentences imposed were concurrent. There was no indication of record that Bates was represented by counsel. The respondents, however, have furnished this Court with an affidavit of the Clerk of the Criminal Court during the period in question. The affidavit indicates that it was

> "the custom and normal procedure, at the time the above styled cases were disposed of, that when a defendant was brought into Court and was not represented by counsel, the Court would orally appoint an attorney who was then present in Court to represent the defendant on a plea of guilty, or if the defendant desired a trial, to reassign the case for a later date to allow the appointed attorney time in which to prepare the defendant's case for trial." (Exhibit D to Respondent's Memorandum on Remand).

There are several observations necessary with respect to those prior convictions, and their effect upon the proceedings. The offenses involved were all for relatively minor, non-violent crimes. This is relevant to indicate the effect their admission may have had upon the jury. It has long been argued that such crimes ought not be admitted for impeachment since they can be prejudicial without indicating much of value about the credibility of the defendant. Nonetheless it is a pertinent observation that it is highly unlikely that long past crimes of the nature of the Bates prior convictions could have played a substantial role in influencing the jury's decision in this case. Such crimes as auto theft, or even the non-violent escape from a reformatory, do not necessarily indicate that one is not a credible person. That would be especially true when a plea of guilty was entered to the prior offenses ruling out the possibility of perjury. Furthermore, for the purpose of influencing the jury in the instant case, it is highly unlikely that evidence of such crimes would color their judgment as to guilt of such quantitatively

different crimes as first degree murder or arson. It is noteworthy that these same arguments were advanced by defendant's counsel at trial. He carefully explained to the jury that his client did not deny committing those offenses in the past and had on each occasion admitted his guilt and so pled. He also pointed out that the most recent of the prior offenses had been committed eight years previously, and that Bates had since been leading an apparently respectable and honest life in California.

The defendant also took the stand and testified concerning the prior offenses. Only after this testimony and cross-examination were the offenses formally admitted into evidence by the prosecution. Thus at the very least the impact of the prior convictions was greatly ameliorated by the manner of their presentation.

 The Court is convinced that the use of the prior convictions was harmless error beyond a reasonable doubt. One of them clearly was admissible under the *Burgett* test, since the petitioner was represented by counsel. The last convictions were also susceptible to admission in evidence when the affidavit of the Clerk of Court is considered. More importantly, however, the evidence of guilt against Bates was overwhelming. Much of the testimony named him as a somewhat more principal participant than the co-defendant Chavez. The jury clearly found both of them to have been partners in the crime and convicted both, even though the objectionable testimony applied only to Bates. It is the finding and conclusion of this Court that any error in the use of Bates' prior convictions was harmless beyond a reasonable doubt.

 Another issue must be faced with respect to the *Burgett* contention however, that is the one of punishment. Petitioner argues that even if the guilt phase of the trial was not substantially affected by the use of the prior crimes, the jury was influenced in setting the death penalty. To an extent this argument has been preempted from the petitioner because Governor Brown commuted the sentence of both petitioners to life imprisonment without parole.[1] Bates, however, contends that this did not give him the full measure of relief possible since the sentence in the first instance might have been lower, or the Governor might have allowed the possibility of parole.

Of course to a certain extent such arguments are unanswerable. Nonetheless some circumstances can be interpreted with a reasonable degree of certainty.

As discussed above, the participation of the two petitioners in the crime was approximately equal. It could, however, be said that Bates was more of a leader in the crime than Chavez. Chavez did not testify and no impeachment testimony was introduced against him. Yet for each the penalty was set at death. This fact alone convinces this Court that the jury could not and would not have given a different penalty to Bates had it not heard the evidence of prior crimes.

Consulting the evidence in the case once again, the Court is impressed that not only was guilt completely established, but that a horrible, premeditated crime was perpetrated. In such a circumstance the Court can conclude and find that the sentence now being served by the petitioner Bates is the lightest that could have been imposed by any reasonable jury. Albeit the jury verdict was originally one of death, but the executive clemency has now intervened to remove that more difficult issue. At this point in time this Court is considering the petitioner as one under a life sentence and evaluating the issue accordingly. Clearly such a sentence was abundantly justified so that the error

---

1. The commutation order of Governor Brown strongly suggests that Chavez not be paroled but the final sentence states only: " . . . do hereby grant to Manuel Joe Chavez, Prison number A 43144, a commutation of sentence from death to life imprisonment."

has now proven harmless beyond a reasonable doubt.

As both of petitioners' contentions have been re-examined in light of the relevant cases and found without merit,

It is ordered that the consolidated actions be, and the same are hereby dismissed.