485 F.2d 90
 Clyde BATES, Plaintiff-Appellant,
v.
Louis S. NELSON, Warden of San Quentin Prison at San
Quentin, California, Defendant-Appellee.
Manuel Joe CHAVEZ, Plaintiff-Appellant,
v.
Louis S. NELSON, Warden of San Quentin Prison at San
Quentin, California, Defendant-Appellee.
 Nos. 71-3042, 71-3043.
 United States Court of Appeals,
Ninth Circuit.
 Aug. 9, 1973.
Certiorari Denied Jan. 7, 1974.
See 94 S.Ct. 877.
 
 Ezra Hendon (argued), Berkeley, Cal., for plaintiff-appellant Bates.
 Roderick P. Bushnell (argued), Bushnell & Caplan, San Francisco, Cal., for plaintiff-appellant Chavez.
 Charles R. B. Kirk, Deputy Atty. Gen. (argued), Evelle J. Younger, Atty. Gen., Edward A. Hinz, Jr., Chief Asst. Atty. Gen., Doris H. Maier, Asst. Atty. Gen., Joyce F. Nedde, Deputy Atty. Gen., San Francisco, Cal., for defendant-appellee.
 Before HAMLIN and TRASK, Circuit Judges, and SOLOMON,* District Judge.
 TRASK, Circuit Judge:
 
 
 1
 This is an appeal from the district court's denial of petitioners' writs of habeas corpus. The consolidated appeal is the latest in a long series of judicial proceedings since appellants were originally indicted on six counts of murder and one of arson for an incident on April 4, 1957, when gasoline and lighted matches were thrown into a bar; six persons died, others were seriously injured. Bates, Chavez and Manuel Hernandez were jointly tried before a jury and convicted on all counts. The jury fixed the punishment of Bates and Chavez at death and that of Hernandez at life imprisonment. Their convictions and sentences were upheld by the Supreme Court of California. People v. Chavez, 50 Cal.2d 778, 329 P.2d 907 (1958), cert. denied, Chavez v. California, 358 U.S. 946, 79 S.Ct. 356, 3 L.Ed. 2d 353; Bates v. California, 359 U.S. 993, 79 S.Ct. 1126, 3 L.Ed.2d 982. This is the second federal habeas corpus proceeding brought by appellants and the fifth time this case has been before this court. In 1959, Chavez and Bates filed habeas corpus petitions. Relief was denied; this court reversed and remanded for the trial court to verify the accuracy of certain transcribed statements and to determine whether certain photographs which had been admitted in the state trial violated the accuseds' rights of due process. Chavez v. Dickson, 280 F.2d 727 (9th Cir. 1960). On remand, the district court again denied the applications; this court affirmed in 1962. Chavez v. Dickson, 300 F.2d 683 (9th Cir.), cert. denied, 371 U.S. 880, 83 S.Ct. 151, 9 L.Ed.2d 116 (1962). Bates and Chavez filed the present petitions in 1963. The first order, disposing of some issues and ordering a hearing on others, was entered on February 24, 1964. Bates v. Dickson, 226 F.Supp. 983 (N.D.Cal.1964). The district court entered its final order denying the petitions on June 29, 1966. This court affirmed, Bates v. Wilson, 385 F.2d 771 (9th Cir. 1967). Petition for certiorari was granted by the Supreme Court and the Supreme Court in Bates v. Nelson, 393 U.S. 16, 89 S.Ct. 50, 21 L.Ed.2d 21 (1968), in a per curiam order vacated and remanded the cause for reconsideration in light of Burgett v. Texas, 389 U. S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), Bruton v. United States, 391 U. S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968). This court in turn remanded the cause to the district court for consideration of newly announced principles. Bates v. Wilson, 406 F.2d 555 (9th Cir. 1969). The district court's order denying the petition was filed in Bates v. Nelson, 333 F.Supp. 896 (N.D.Cal. 1971). This court has jurisdiction under 28 U.S.C. Sec. 2253.
 
 
 2
 A complete statement of the facts is reported in People v. Chavez, 50 Cal.2d 778, 329 P.2d 907 (1958). It is undisputed that appellants together with a co-defendant, Hernandez, and another man, Brenhaug, originally charged with the same offenses but whose indictment was set aside, were present at the Mecca Bar in Los Angeles on the evening of the fire. Following a fight, appellants and Hernandez were physically ejected from the bar and Brenhaug subsequently left the bar and joined with the other men. The evidence and testimony presented at trial indicated that the four men, upset that they had been thrown out of the bar, returned to the Mecca Bar later with a can of gasoline they had purchased and proceeded to spread the gasoline into and around the entrance of the bar. The building was ignited with lighted matches thrown by one and the deaths and injuries of people inside resulted. Appellant Chavez asserted an alibi defense alleging he went home after being ejected from the bar and stayed there. Appellant Bates did not contest his involvement in the offense but urged that he was so intoxicated that he could not have formed the requisite mens rea to have committed the offenses charged. On this appeal appellants challenge the extra-judicial statements made by their co-defendant, Hernandez, which were admitted into evidence although Hernandez never testified at the trial. The government concedes this constituted error under Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), but it urges, and the district court ruled, that the Bruton error was harmless beyond a reasonable doubt. Appellants also challenge extra-judicial statements made by Brenhaug which were admitted into evidence after Brenhaug had testified and was subjected to cross-examination and was excused as a witness. The district court ruled the Brenhaug statement was admissible because he testified and was cross-examined at trial. Mitchell v. United States, 434 F.2d 230 (9th Cir. 1970), cert. denied, 402 U.S. 946, 91 S.Ct. 1636, 29 L. Ed.2d 115 (1971). The challenged statements were presented to police during police interrogation. Hernandez' first statement was made during an interrogation session with him alone. Hernandez' second statement and the Brenhaug statement were part of a joint statement by the four men, in which Brenhaug related his version of the incident, Hernandez added his version, Bates claimed he could not remember anything because of his intoxication and Chavez stated the others were lying. Brenhaug's portion of the joint statement was not totally consistent with his testimony at trial. The government presented the earlier Brenhaug statement to bolster Brenhaug's trial testimony which had been subjected to impeaching cross-examination. Bates claims a second error based on Burgett v. Texas, 389 U.S. 109, 88 S. Ct. 258, 19 L.Ed.2d 319 (1967). Burgett held that prior convictions which had been obtained in violation of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, could not be used to support guilt or to enhance punishment. The district court held that any Burgett error was harmless beyond a reasonable doubt. The prior convictions were for offenses between 1937 and 1947. Two were Dyer Act convictions, two were for burglary and grand theft, and one was for escape.[1] All of the convictions except the escape conviction were allegedly obtained upon the appellants' guilty plea. There is no positive showing that Bates had been represented or that he affirmatively waived representation by counsel in any of the cases except the escape conviction.
 
 I. Effect of the Bruton Error
 
 3
 On remand to the district court, the court was forced to consider whether a Bruton error constituted reversible error under the circumstances of this case. Two Supreme Court cases have decided that a violation of the Bruton rule does not require an automatic reversal. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), and Schneble v. Florida, 405 U.S. 427, 92 S. Ct. 1056, 31 L.Ed.2d 340 (1972). This court recently stated the standard for review of such error in United States v. Steed, 465 F.2d 1310 (9th Cir.), cert. denied, 409 U.S. 1078, 93 S.Ct. 697, 34 L. Ed.2d 667 (1972):
 
 
 4
 "Reversal, however, can be avoided only if, after close and careful review of the facts and circumstances of each case, a reviewing court is able to declare a belief that the violation was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705] (1967)." 465 F.2d at 1318.
 
 
 5
 Depending on the circumstances of the individual case, this court has recently held that a Bruton error was reversible error in United States v. Sidman, 470 F.2d 1158 (9th Cir. 1972):
 
 
 6
 "We cannot say that the Bruton error was harmless beyond a reasonable doubt. Other evidence linking Clifford to the robbery was not overwhelming. . . . Testimony by two eyewitnesses who identified Clifford as one of the robbers was not strong. The remaining evidence was Carroll's testimony that Clifford told him that he and Sidman robbed the bank. The jury's assessment of this evidence, had it not heard Carroll testify to Sidman's confession, is highly problematical." 470 F.2d at 1171.
 
 
 7
 This court in Steed determined that a Bruton error there was harmless error:
 
 
 8
 "From our analysis and appraisal of the record, we have reached the conclusion that the proof of Steed's guilt, based on admissible evidence, was abundantly established. It is our belief, to paraphrase the quote above from Schneble, that the minds of an average jury would not have found the Government's case significantly less persuasive had the testimony as to Hintz' admissions to Miss Coch, made out of the presence of Steed, been excluded.
 
 
 9
 "The violation of the Bruton rule, in light of the facts and circumstances of this case, constitutes harmless error beyond a reasonable doubt." 465 F.2d at 1319.
 
 
 10
 These cases indicate that this court has interpreted Supreme Court rulings regarding the harmless error rule so that an "overwhelming-evidence test" is appropriately applied in determining whether a specific error is harmless or reversible error. See Note, Harmless Constitutional Error: A Reappraisal, 83 Harv.L.Rev. 814 (1970).
 
 
 11
 The district court judge ruled that the quantum of untainted evidence was such that he had no trouble in ruling that the Bruton error was harmless beyond a reasonable doubt. Viewing the admission of the Hernandez statements as a denial of appellants' sixth amendment right to confrontation, the district court pointed out that Hernandez' statements merely corroborated other forceful prosecution evidence. The judge felt Hernandez' statements did no more than provide a neat summary of the events of the evening of the offense. The crucial facts, the judge concluded, were established by other competent evidence. It was his opinion that the jury would have reached the same verdicts even without the Hernandez' admissions. An independent and careful review of the entire record convinces us that he is clearly correct.
 
 
 12
 Appellants contend in the first instance that the Bruton rule should also apply to Brenhaug's out-of-court statement which was admitted into evidence after Brenhaug had concluded his testimony and after Brenhaug's cross-examination had been concluded. Appellants reason that the purpose of the Bruton rule should extend to the situation where, as here, evidence of a co-defendant's admission is presented without the opportunity to cross-examine the co-defendant concerning the confession. Appellants never explain why Brenhaug was not recalled as a witness so appellants could cross-examine him concerning his out-of-court statements admitted as evidence after his initial cross-examination. Brenhaug was not unavailable for cross-examination in the same sense as a co-defendant who does not take the stand. This court has held recently in United States v. Zito, 451 F.2d 361 (9th Cir. 1971), that Bruton is inapplicable when the co-defendant has taken the stand, subject to complete cross-examination.
 
 
 13
 If both Brenhaug's testimony and his out-of-court admission constituted untainted evidence then there is little room for doubt that the Hernandez statements, though violative of the Bruton rule, were paled by the overwhelming quality and quantity of proper evidence and that admission of the tainted statements was harmless error. We believe that such was the case. Even assuming, arguendo, that Brenhaug's extra-judicial statement should not have been admitted under Bruton, however, the district court's determination need not be reversed. Brenhaug's in-court testimony together with that of independent eyewitnesses, established the vital facts needed to sustain a jury verdict against appellants.[2]
 
 
 14
 Second, appellants both assert that the Bruton error should be deemed reversible error because of the nature of their defenses, which were undermined by the improperly admitted statements. Bates, for example, claims that the Hernandez statements were particularly damaging to his defense of intoxication, i. e., that he lacked the requisite mens rea to form a specific intent to commit the offenses. Although the Hernandez statements portray Bates as the mastermind who engineered and directed the offense, there is substantial independent evidence which was properly admitted which established the same theory. Brenhaug's testimony and confession, the testimony of the gas station attendant, testimony of eyewitnesses at the bar and circumstantial evidence painted a picture of a man seeking revenge because he was infuriated at his ejection from the bar. Hernandez' statements merely corroborate other competent evidence in the case. Similarly Chavez claims that Hernandez' statements were particularly damaging to his defense-that he was not present at the time of the offense. Hernandez' statements were not the only evidence which linked Chavez with the offenses. Brenhaug's testimony and confession were unequivocal on the question of Chavez' presence, even though there were inconsistencies concerning the detailed actions of Chavez at the scene of the offense. There was also eyewitness identification testimony linking Chavez with the offenses and impeaching his alibi defense. There is no merit in Chavez' contention that the evidence absent the Hernandez statements was less than overwhelming.
 
 II. The Burgett Error
 
 15
 It is also uncontested that the court committed error in admitting evidence of prior convictions against appellant Bates. The Supreme Court has ruled that evidence of such convictions, when invalid under Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), may not be used against the defendant to support guilt, Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed. 2d 319 (1967), to enhance punishment, United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), or to impeach, Loper v. Beto, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972).
 
 
 16
 Although the Supreme Court has never ruled specifically that the harmless error doctrine applies to Burgett errors, this court held that such error may be harmless beyond a reasonable doubt under circumstances of a particular case. Tucker v. United States, 431 F.2d 1292 (9th Cir. 1970), aff'd on other grounds, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972)[3] The district court judge in this case was therefore correct in concluding that the harmless error rule is applicable to Burgett errors in this circuit.
 
 
 17
 We concur with the analysis of Judge Carter, 333 F.Supp. 896 at 899-901, which we adopt, on the effect of the prior convictions in this case when considered in the light of Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). In view of the overwhelming evidence from independent witnesses reinforced by circumstantial evidence establishing Bates' complicity and active participation in the crime and negating his defense of "unknowing drunken stupor," we find that any error in the admission of priors or use of them during the trial was harmless beyond a reasonable doubt within the meaning of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
 
 
 18
 In the instant case, the prior convictions were introduced by the prosecution to impeach the credibility of appellant Bates. Unlike the situation in Howard v. Craven, 446 F.2d 586 (9th Cir. 1971), the principal issue of the case was not the credibility of the appellant's story as compared to that of the complainant. Bates' defense was overwhelmingly impeached, not by evidence of prior convictions, which was relatively unimportant, but by evidence presented in the testimonies of numerous prosecution witnesses. Bates' defense was that he was too drunk to possess the mens rea necessary to constitute the body of the crime with which he was charged. He introduced evidence that he began drinking before seven in the morning and continued throughout the day and evening before going to the Mecca. He consumed wine, beer, tequila and bourbon. His defense was built around "how much he had drunk and how little he remembered." Yet the prosecution's attack upon this defense was not mounted upon prior convictions which would cause Bates' credibility to be questioned. Instead, the state relied upon independent evidence to show that he could not have been in an alcoholic stupor and remained alert enough to have been substantially responsible for formulating a plan of revenge and effectively participating in its execution. Evidence was produced to show that he worked during the day and that his handwriting on his worksheet in the early afternoon did not appear to be that of a drunken man; that he drove his truck into the shop and complained of a mechanical malfunction; that he had presence of mind to chew garlic to mask an alcoholic breath; that his supervisor on the job did not observe anything wrong with his ability to walk; that he conversed with and danced with a waitress at the Mecca and participated in a fight; that he became outraged at his treatment and threatened revenge; that he helped formulate the plan, found the bucket, bought the gasoline and was agile and coordinate enough to throw it in the bar and get away from the explosion and fire that resulted; and that he had a conversation with a waitress at the Corner Bar after the fire. His head and his hands seemed to be working, albeit to a horrible purpose. Under these circumstances the Burgett error was harmless beyond a reasonable doubt either to support guilt or to attack credibility and the district court's decision should be affirmed.
 
 
 19
 One other argument is made on the basis of Burgett, supra, and of United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). This is that the erroneous admission of at least two of the priors had a prejudicial effect because they resulted in an enhancement of punishment. Governor Brown commuted both death sentences to life imprisonment but limited the life sentence of Bates to one "without possibility of parole." Bates now suggests that the appropriate relief would be "simply to order the District Court" to issue the writ to the extent of modifying Bates' sentence to life imprisonment. But Bates' sentence under judicial process was death. The sentence of Chavez was the same, although Chavez was not faced with evidence of priors. The commutation was by an act of executive clemency and the limitations were upon considerations which the executive believed to be appropriate. He did not disclose them.[4]
 
 
 20
 We know of no authority which we possess, and none has been revealed to us, by which we may review acts of executive clemency.
 
 
 21
 Having reviewed the record carefully we find no error other than that which appears to us to be harmless beyond a reasonable doubt, and we therefore affirm the judgment dismissing the consolidated actions.
 
 
 
 *
 Honorable Gus J. Solomon, Senior United States District Judge, for the District of Oregon, sitting by designation
 
 
 [1]
 The convictions for burglary and grand theft, although involving two separate events, occurred on the same day, indictments were entered at one date, and trials on guilty pleas were held on one date. Sentences were the same for each and ran concurrently with each other. We find no legal significance in their treatment as one or as two convictions for purposes here
 
 
 [2]
 The presence of petitioners with Brenhaug and Hernandez in the bar, the fight, the expulsion of petitioners and Hernandez was witnessed by bartender Fenton, waitresses Chapdelaine and Tolar, and customers Pennebaker, McKibban and Morales
 Tolar, Morales and McKibban heard one of the group say they would be back and get even.
 Ledgerwood, a gas station attendant, testified that he sold about five gallons of gasoline to Bates and Hernandez which he pumped into a bucket.
 Chapdelaine testified that she saw Bates throw gasoline onto the floor from a bucket and shout "I will get everyone of you in there"; Pennebaker saw Chavez dumping gasoline from a bucket; Chapdelaine also saw Chavez light a book of matches and toss it inside, and there was other eyewitness testimony and circumstantial evidence linking petitioners to the crime.
 
 
 [3]
 In Loper v. Beto, supra, at 483 n. 12, 92 S.Ct. 1014 at 1019, after declaring that "[i]n the circumstances of this case there is little room for a finding of harmless error . . .," the Court cited Subilosky v. Moore, 443 F.2d 334 (1st Cir.), cert. denied, 404 U.S. 958, 92 S.Ct. 328, 30 L.Ed.2d 276 (1971); Tucker v. United States, 431 F.2d 1292 (9th Cir. 1970), aff'd, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); Gilday v. Scafati, 428 F.2d 1027 (1st Cir. 1970). In each of those cases a harmless error rule had been applied to Burgett error resulting from the use of Gideon defective convictions for purposes of impeachment. There is reason to believe, therefore, that our decision in applying the rule of harmless error in Tucker, supra at 1293, was proper although Tucker was actually affirmed on different grounds by the Supreme Court
 
 
 [4]
 He did state that "[t]he seriousness of Mr. Bates' crime and his subsequent conduct conclusively demonstrate to me that he should probably never again be released from prison." He did not refer to any prior record