OPINION OF THE COURT
Raymond Harrington, J.
John Pilgrim, the defendant herein, has moved this court pursuant to CPL 440.10 and 440.20 for an order vacating the judgments of conviction and sentences imposed under indictments numbered 33214, 34479, and 45711. Specifically, the defendant’s prayer for relief is predicated upon CPL 440.10 (subd 1, par [h]) which allows for vacatur of a judgment of conviction which “was obtained in violation of a right of the defendant under the constitution of this state or of the United States.”
The basis for the defendant’s claim is that he was at one time represented by Albert Silver, “a layman masquerading as an attorney but in fact not licensed to practice law” (People v Felder, 47 NY2d 287, 291). For purposes of clarification, it is important at the outset to delineate the boundaries óf Mr. Silver’s representation of the defendant. On indictments numbered 33214 and 34479 (as well as on Nassau County District Court matters denominated CR *843 1112/72, CR 2754B/71 and 4204B/71), Albert Silver was the “attorney” of record for Mr. Pilgrim. (Silver also represented the defendant on Indictment No. 33054, an indictment dismissed in satisfaction of the defendant’s plea of guilty to Indictment No. 34479.), The defendant contends that, pursuant to the mandate of People v Felder (supra) the convictions obtained under indictments numbered 33214 and 34479 must be vacated.
On Indictment No. 45711, Mr. Pilgrim was represented by Frank Dillon, Esq., an attorney duly admitted to the practice of law in the State of New York. Upon the trial of that indictment, the Trial Judge allowed in evidence certificates of conviction for the judgments obtained under indictments numbered 33214 and 34479, and further allowed inquiry into the facts underlying the charges in those indictments. The defendant contends that this violates the spirit, if not the letter, of the United States Supreme Court’s decision in Burgett v Texas (389 US 109) and that it per se constitutes error of constitutional proportion requiring a vacatur of the conviction.
indictments no. 33214 and no. 34479 (Judgments of Conviction,
June 21, 1972, affd
41 AD2d 805, lv to
app den [Jasen, J.].)
Initially, it is essential to determine the validity of the convictions under indictments numbered 33214 and 34479. It is well settled in this jurisdiction that a criminal defendant is entitled to the effective assistance of counsel (People v Droz, 39 NY2d 457; People v LaBree, 34 NY2d 257; People v Bennett, 29 NY2d 462). In People v Felder (supra, at p 293) the Court of Appeals defined counsel “as the word is used in the Sixth Amendment, [to] mean nothing less than a licensed attorney at law” (Emphasis supplied.) The People concede, on constraint of Felder, that “the judgment of convictions [sic] under indictments numbered 33214 and 34479 should be vacated”, and there appears to be no reason in law or fact for this court to hold differently. *844 Accordingly, the convictions under indictments numbered 33214 and 34479 are vacatéd. These cases are restored to the Trial Calendar. Pursuant to CPL 440.10 (subd 7) Indictment No. 33054 also is restored to the Trial Calendar.
indictment no. 45711 (Judgment of Conviction, May 18, 1977, affd
67 AD2d 554, affd 52 NY2d 730.)
The next area of inquiry concerns whether or not the admission of evidence concerning “uncounseled” convictions on the defendant’s trial under Indictment No. 45711 was so prejudicial as to mandate a new trial. Any discussion of the use of uncounseled convictions must necessarily commence with an analysis of Burgett v Texas (389 US 109). In Burgett, the defendant was charged in one count of a five-count indictment with the crime of assault with intent to murder. Pursuant to the Texas recidivist statutes, the additional counts of the indictment dealt with allegations concerning four previous felony convictions of the defendant (i.e., one prior Texas conviction for burglary and three Tennessee convictions for forgery). At the trial, and in the jury’s presence, the prosecutor attempted to introduce into evidence a certified copy of one of the Tennessee convictions. Apparent from the face of the certified copy was the fact that the defendant was not represented by counsel, nor was there any indication in the record that the defendant had waived counsel. The defendant objected to the introduction of said certificate and the court reserved decision “apparently to give the State an opportunity to offer any of the other convictions into evidence.” (Burgett v Texas, supra, at p 112.) The prosecutor then offered into evidence a second version of the same conviction, which copy did not contain the words “without counsel”. The court admitted the second version of the conviction into evidence, but subsequently instructed the jury to disregard all prior offenses.
In holding that Burgett’s conviction must be reversed, the United States Supreme Court relied heavily on the *845 proscription against uncounseled felony convictions that it had first set out in Gideon v Wainwright (372 US 335). A 6-3 majority decided that the defendant’s right to counsel had been violated in the above-mentioned Tennessee proceeding and that the resulting Texas conviction was therefore void. Mr. Justice Douglas, expressing the opinion of the court, stated that, “[t]o permit a conviction obtained in violation of Gideon v. Wainwright to be used against a person either to support guilt or enhance punishment for another offense (see Greer v. Beto, 384 U. S. 269) is to erode the principle of that case. Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right.” (Burgett v Texas, supra, at p 115.) The court found that, under the facts presented by the Burgett case, the constitutional error could not be considered “harmless beyond a reasonable doubt.” (Chapman v California, 386 US 18.) However, by limiting their holding to the facts of the case, the majority implied that error of this genre, in a proper factual situation, could be considered to be harmless error (Burgett v Texas, supra, at p 115; see Bates v Nelson, 485 F2d 90, cert den 415 US 960). The People have provided this court with numerous Circuit Court of Appeals cases which adopt the above interpretation of Burgett and hold that the introduction of uncounseled convictions can be harmless error beyond a reasonable doubt. (See Zilka v Estelle, 529 F2d 388; Thomas v Savage, 513 F2d 536; Bates v Nelson, supra; United States v Faulkenbery, 472 F2d 879, cert den 411 US 970; Subilosky v Moore, 443 F2d 334, cert den 404 US 958; Tucker v United States, 431 F2d 1292, affd on other grounds 404 US 443; Gilday v Scafati, 428 F2d 1027, cert den 400 US 926.)
Although the instant case and those above cited are similar in that they deal with the use of uncounseled convictions at the trial level, there are facts peculiar to the defendant’s case that make it one of first impression. Unlike any of the cases cited above, the case at bar involves the admission of evidence proving prior “uncounseled” felony convictions on the People’s direct case. As will be seen from the discussion of the trial evidence which follows, counsel for the defendant raised the defenses of *846 entrapment and agency upon his cross-examination of certain of the People’s witnesses. Furthermore, the case contained an issue of identity. The trial court therefore permitted the District Attorney to introduce evidence of prior convictions on his direct case.
1. to demonstrate the predisposition of the defendant to commit the crimes charged in the indictment, to attempt to overcome the entrapment defense raised (People v Mann, 31 NY2d 253; People v Calvano, 30 NY2d 199);
2. to demonstrate the defendant possessed the requisite criminal intent, to attempt to overcome the agency defense raised (People v Lam Lek Chong, 45 NY2d 64; People v Bethea, 73 AD2d 920); and
3. to help establish the identity of the defendant as the perpetrator of the crimes charged (People v Mollineux, 168 NY 264; see People v Kennedy, 27 NY2d 551; People v Thau, 219 NY 39).
The issue here is not the propriety of the Trial Judge allowing the introduction of prior convictions on the People’s direct case. Rather, now that it has come to light that those prior convictions were uncounseled, the issue becomes — was their introduction into evidence on the People’s direct case, under the circumstances outlined above, so “inherently prejudicial” (Burgett v Texas, 389 US 109, 115, supra), that vacatur of the instant conviction is required, or was that constitutional error harmless? To determine that issue, a discussion, in some detail, of the trial evidence is essential.
The People’s direct case centered around the testimony of undercover Police Officer Don Giglio. Giglio was assigned, at all times relevant hereto, to the Nassau County Police Department Narcotics Bureau and his specific assignment concerned drug traffic in the New Cassel area. According to Giglio’s testimony, on the afternoon of October 19, 1976, he and his partner, Police Officer Robert Anderson, went to the premises leased by the defendant (i.e., 221 Brooklyn Avenue, New Cassel) and purchased three “dime” bags of heroin. Giglio and his partner returned to the above premises on the following evening to transact another buy. On this occasion, though, Anderson *847 remained outside the house in a car while the witness entered the location and purchased heroin. This procedure was repeated on the afternoon of October 21, 1976 with Giglio again making the purchase while Anderson waited in the vehicle.
Giglio further testified that he approached the defendant on October 25, 1976 concerning a trip into Manhattan for the purchase of five “quarters” of heroin. The defendant was unable to finance the purchase and Giglio offered to secure the necessary funds and accompany the defendant into Harlem. According to Giglio, the defendant requested an additional “quarter” as his “fee” and Giglio consented. On the evening next ensuing, Giglio, armed with a hidden tape recorder, drove the defendant into New York City where the defendant purchased the afore-mentioned quantity of heroin. A redacted version of that portion of the conversation between Giglio and the defendant which Giglio was able to record was admitted into evidence at trial. The pertinent excerpts of the recording dealt with the details of the instant purchase and serve to strongly corroborate Giglio’s testimony concerning the transaction.
Giglio’s testimony included one further drug transaction between himself and the defendant. On the evening of November 10, 1976, the witness once again met with the defendant at his home and transported him to Manhattan for the purpose of obtaining heroin. On this occasion, the defendant purchased 14 “quarters” of heroin — 12 for Giglio and 2 as his fee, for the alleged service that he had provided the officer. Giglio also testified on redirect examination about a purchase of glassine bags by the defendant on the return trip.
On cross-examination of Giglio, counsel for the defendant attempted to raise a rather feeble entrapment defense by suggesting that the defendant was a “small time operator” who was “prompted” into the larger sales by the insistence of Giglio. Counsel further suggested that the defendant was merely an agent of Giglio (but see the factors in People v Bethea, 73 AD2d 920, supra). Officer Anderson then testified, concerning several counts in the indictment, that he had accompanied Giglio on the above dates, that he had made a purchase from the defendant, *848 whom he identified, on October 19, 1976, and that he had no firsthand knowledge of either of the larger sales. Some other police personnel who testified were members of the surveillance teams on October 26 and November 10, 1976. They could only state that Giglio and a male black traveled from Westbury to Manhattan and then returned to West-bury.
At that juncture, and on an application by the prosecutor, the trial court decided that the People would be permitted to offer evidence of several unrelated sales not charged in the indictment in order to demonstrate predisposition. The prosecution then introduced the testimony of several police officers and detectives. Before this additional testimony, the court read the jury a preliminary charge on agency and entrapment. The People then called Police Officer Joseph Sampson to the witness stand. Sampson testified that he had been a member of the surveillance teams on October 26 and November 10, 1976. The defendant was identified by Sampson as the individual who had accompanied Giglio on both of his journeys into Harlem. Sampson stated that he was able to identify the defendant due to prior meetings with him in 1972 at which time the officer had purchased small quantities of heroin from the defendant. Counsel entered into a stipulation that the aforesaid sales to Sampson culminated in a conviction under Indictment No. 34479 (upon which the defendant was represented by Albert Silver). The stipulation was then read to the jury and a certificate of conviction on the above indictment was admitted into evidence.
Police Officer Knorland Carroll, the next witness for the People, testified that he was Sampson’s partner on both the October 26 and November 10 surveillance teams. Carroll was also able to identify the defendant as the individual who had accompanied Giglio on the dates in question. Although the court permitted Carroll to testify that his basis of knowledge for the identification was previous drug sales transacted between himself and the defendant in or about 1971, the jury was instructed that this testimony was being allowed only for the purpose of proving the identity and the predisposition of the defendant. Carroll’s testimony further indicated that the above transactions *849 resulted in Indictment No. 33214 upon which the defendant was also represented by Albert Silver and upon which a conviction was obtained. The court accepted a copy of the certificate of conviction under said indictment into evidence for the limited purposes stated above. The remainder of the People’s case consisted of additional police personnel involved in the scientific testing of the controlled substances in question and the testimony of Detective Sergeant Joseph Hughes concerning helicopter surveillance of Giglio’s vehicle on November 10, 1976.
The entire defense case consisted of the testimony of the defendant. The defendant denied the smaller sales alleged by Giglio and Anderson but admitted the facts of the two transactions involving trips to Harlem. The defendant’s memory of the incidents in question, as to those facts which he was able to recall, differed significantly from the recollection of Giglio. Pilgrim claimed that he participated in the illicit transactions only as a favor to Giglio. The defendant also maintained that he believed that the heroin he purchased on Giglio’s behalf was for the officer’s personal use. On cross-examination, the prosecutor was able to elicit testimony which tended to demonstrate that the defendant’s expenses were far in excess of his income. Throughout Pilgrim’s testimony on direct and cross-examination, many of his responses bordered on the incredible. Even if viewed in a light most favorable to the defendant, his testimony strains credulity. It should be noted that defense counsel elicited admissions from the defendant concerning the aforesaid certificates of conviction under indictments numbered 33214 and 34479, as well as on CR 1112/72, a stolen property charge in the Nassau County District Court (a charge on which the defendant was also represented by Albert Silver). This was done presumably to take the wind out of the prosecutor’s sails as to the defendant’s prior record and to buttress the “small time dealer” theory of entrapment.
The attorney for the defendant herein relies heavily on Burgett v Texas (389 US 109, supra) and Loper v Beto (405 US 473) to support the proposition that the defendant was per se denied a fair trial due to the inherent prejudice of the utilization of uncounseled felony convictions at trial. *850 The Supreme Court in Loper, following the guidelines it had established in Burgett, reversed the conviction of a defendant who had been cross-examined concerning four previous uncounseled felony convictions. The gravamen of the court’s holding emphasized the importance of the defendant’s credibility in light of the fact that the prosecution relied heavily on the testimony of one witness (the complainant) to sustain the conviction (Loper v Beto, supra, at p 483).
Notwithstanding the foregoing, any determination of the merits of the instant motion must necessarily rest on the application of the constitutional harmless error standard set forth in Chapman v California (386 US 18, supra). Whenever the defendant is deprived of a “substantial right” (Chapman v California, supra), regardless of the overwhelming quality of the other proof, the error may not be considered harmless if “there is a reasonable possibility that the evidence complained of might have contributed to the conviction.” (Fahy v Connecticut, 375 US 85, 86-87; emphasis added; see, also, Chapman v California, supra; People v Crimmins, 36 NY2d 230, 237, 240-241.) An analysis of the case at bar must therefore consider the totality of the evidence in the case and the effect, if any, that the error had on the jury’s verdict.
The introduction at trial of uncounseled convictions does not automatically warrant a reversal (Thomas v Savage, 513 F2d 536, supra). The overwhelming evidence of guilt is decisive (United States v Faulkenbery, 472 F2d 879, supra; Gilday v Scafati, 428 F2d 1027, supra; Subilosky v Moore, 443 F2d 334, supra). The incredibility of defendant’s testimony (Gilday v Scafati, supra), the fact that the defendant’s testimony was discredited by other evidence (Tucker v United States, 431 F2d 1292, supra) and the limited use of the uncounseled convictions at trial are sufficient to render the error harmless (Zilka v Estelle, 529 F2d 388, supra).
The introduction of the certificates of conviction in the instant case was harmless constitutional error. There is no question that the certificates would have been admissible if not uncounseled (People v Calvano, 30 NY2d 199, supra; People v Mann, 31 NY2d 253, supra; People v Lam Lek Chong, 45 NY2d 64, supra; see, also, United States v *851 Sorrells, 287 US 435). Moreover, evidence of prior criminal acts is always admissible for purposes other than establishing the defendant’s propensity to commit similar crimes (People v Santarelli, 49 NY2d 241, 247; People v Tas, 51 NY2d 915, 916). Certainly, the certificates were properly admitted for the purpose of establishing identity (People v Molineux, 168 NY 264, supra; People v Kennedy, 27 NY2d 551, supra; People v Thau, 219 NY 39). Here, the prosecutor’s use of the certificates of conviction was limited. They were not referred to in the opening statement or the summation and were only briefly mentioned in cross-examination (see Zilka v Estelle, supra).
In many respects, this is not a bare one-witness case by the People. Other witnesses provided significant corroboration of the testimony of Officer Giglio, independent of the uncounseled convictions. Most telling were the recorded conversations. So telling were those recordings that this defendant, willing to admit he was a “small time dealer”, denied the small sales (not recorded), but admitted the larger sales. The defendant’s testimony, in this court’s opinion, is incredible as a matter of law. The admission of the certificates of conviction was not at all damaging to the defendant’s entrapment “defense”. In fact, they buttressed the defendant’s own contention of being a small time dealer. Moreover, the defendant, in his own testimony, eliminated the issue of identity when he took the stand; the admission of the uncounseled convictions became all the more insignificant thereafter on that issue.
Accordingly, the motion to vacate this defendant’s conviction under Indictment No. 45711 is in all respects denied.
RESENTENCE UNDER INDICTMENT NO. 45711
The defendant has further requested that he be resentenced on Indictment No. 45711, pursuant to CPL 440.20. United States v Tucker (404 US 443), a progeny of Burgett v Texas (389 US 109, supra) dealt with the effect of uncounseled convictions on sentencing. In Tucker, three prior felony convictions were used at trial by the prosecution for the purpose of impeachment. Subsequent to the defendant’s conviction and sentencing thereon, it was deter *852 mined that Tucker had not been represented by counsel on two of those prior convictions. The defendant brought a proceeding under section 2255 of title 28 of the United States Code in the Federal District Court in which he had been convicted and sentenced. That court held that the error in permitting the prior uncounseled convictions to be used to impeach was harmless beyond a reasonable doubt. (Tucker v United States, 299 F Supp 1376.) On appeal, the Court of Appeals for the Ninth Circuit agreed, then remanded the case to the District Court for resentencing “without consideration of any prior convictions which are invalid under Gideon v. Wainwright, 372 U. S. 335”. (Tucker v United States, 431 F2d 1292, 1294, supra.) Upon the Government’s appeal to the United States Supreme Court, the court affirmed the holding of the Ninth Circuit, stating that the sentence imposed,
“might have been different if the sentencing judge had known that at least two of the respondent’s previous convictions had been unconstitutionally obtained ***
“Erosion of the Gideon principle can be prevented here only by affirming the judgment of the Court of Appeals remanding this case to the trial court for reconsideration of the respondent’s sentence.” (United States v Tucker, 404 US 443, 448-449.)
In the case at bar, the People concede that due process and the authority of United States v Tucker (supra) mandate the granting of the defendant’s motion for the limited purpose of resentencing him on Indictment No. 45711 without consideration of the prior “uncounseled” convictions obtained under indictments numbered 33214 and 34474, and under CR1112/72. There is no reason, in law or fact, for this court not to grant the defendant’s motion for resentence on the instant indictment, at least to this limited extent.